No. 3.—THE. MAYOR, &c.. SAVANNAH, plaintiffs in error, *vs.* CHARLES HARTRIDGE, defendant.

[1.] Taxation, in reference to the subject matter, is divided by writers on political economy, as well as the tax laws of all governments, into three classes—capitation, property and income; and where one or more is treated of or acted upon, the other is never intended.

[2.] The history of the legislation of the State, in reference to a particular subject matter of taxation, may be referred to, as tending to aid in the construction to be given to the Statute; and where the State has never taxed income, the power to do so in a corporation, must appear by express words or unavoidable implication.

[3.] A charter, authorizing a municipal corporation to tax real and personal estate, does not, necessarily, confer the right to tax *income.*

[4.] In the construction of Statutes made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their direct terms or their clear import.

[5.] Statutes which impose restrictions upon trade, or common occupations, must be construed strictly.

[6.] Statutes levying taxes should be construed most strongly against the Government and in favor of the citizen.

[7.] Revenue Statutes are, in no just sense, remedial laws, and are not, therefore, to be liberally construed.

[8.] In laws imposing taxes, if there be a real doubt whether the intention of the Act was to levy the tax, that doubt should absolve the tax-payer.

[9.] Retrospective Statutes are forbidden by the first principles of justice.

Certiorari, in Chatham Superior Court. Decided by Judge FLEMING, June, 1849.

By an ordinance of the Mayor and Council of Savannah, passed 11th November, 1842, a tax was imposed as follows : "Upon all gross income derived from commissions (whether ordinary or guaranty commissions) charged on purchases or sales of any articles whatever, on procuring or collecting freights, on receiving or forwarding goods, on all money negotiations, on the purchase or sale of stocks, or other evidences of debt, on commissions received as executor or executrix, or administrator or administratrix, and also upon the profits or income arising from the pursuit of any faculty, profession or calling, (the clergy and schoolmasters excepted) there shall be paid a tax of two and a half per cent. on the gross amount of said bill."

Under this ordinance, Charles Hartridge returned for "commissions on purchases, &c. $11,248 ;" and having failed to pay the tax, execution issued. Hartridge filed an affidavit of illegality, on the ground that the ordinance was unauthorized by any of the Acts granting power to tax to the Council.

These Acts are as follows: The Act of 1787 granted power " to lay and assess one or more rate or rates, assessment or assessments, upon all and every person or persons, who do or shall inhabit, hold, use or occupy, possess or enjoy any lot, ground, houses or place, building, tenement or heriditament, in any square, street or place, within the limits of the Town of Savannah," &c.   The Act of 1805 grants power " to assess and levy an annual tax on all persons and property within the said City, liable to pay tax by the general tax laws."   The Act of 1825, by the seventh section, grants power to raise money "by a poll tax, or by tax and assessment, upon all real and personal estate within the limits of the City."   By the fifteenth section, the Council are authorized to " tax pedlers within the jurisdictional limits of the corporation of Savannah, and to tax all and every person or persons vending

any goods, wares or merchandize in the City of Savannah or hamlets thereof."

The Mayor and Aldermen, in Council, overruled the affidavit of illegality, and Hartridge carried the case before the Superior Court, by *certiorari*. On hearing the *certiorari*, the same was sustained by the Court, and the decision of the Council reversed.

This decision is alleged as error.


S. Cohen, for plaintiff in error.


The Acts of the Legislature, viz: the Act of the 10th February, 1787, and the Act of 2d December, 1805, and the Act of 24th December, 1825, give to the corporation the right to enforce the tax in question. *Marbury & Crawford,* 121. *Clayton,* 243. *Dawson,* 464.

Defendant is a factor and vendor of goods, wares and merchandize, and therefore liable to the tax. *Clayton,* 226, 229. *Dawson,* 420. *Hotchkiss,* 131, 132. And that this is not a poll tax. 16 *Peters,* 435, 446.

*Income* is properly classed under the word property, and is, therefore, a subject of taxation. 2 *Blackstone,* 103, 17. *Linning vs. City Council of Charleston,* 1 *McCord,* 345, 349. *Bank of the State of Georgia vs. The Mayor and Aldermen, Dudley,* 130, 131, 137. *Portland Bank vs. Apthorp,* 12 *Mass.* 252, 6, 7. 16 *Peters,* 435, 445, 446. 3 *McCord,* 374, 5, 6.

The charter of the City of Charleston authorizes the City Council " to make assessments on the inhabitants of Charleston, or those who hold taxable property within the same," and it has been decided that this grant of power gives *full* power to tax all subjects of taxation. 1 *Nott & McCord,* 527, 28, 30. 1 *McCord,* 245, 7, 8, 9. 4 *Wheaton,* 429. 16 *Peters,* 435, 445. 3 *McCord,* 374, 5, 6.

And, finally, the Legislature, at its late session, has given a legislative interpretation to the various Acts of 1787, 1805, 1825, confirmatory of the power, and our own Supreme Court is liberal in its construction of City charters. 5 *Kelly,* 546, 561, 66, 67.


Ward (representing McAllister) and Law, for defendants, cited :

2 *Speers*, 729 *to* 735.    4 *Hill*, *N. Y.* 83, 4.    4 *Peters*, 168.    1 *Halsted*, 352.    1 *Blackf.* 336.    1 *McLean*, 41.    16 *Peters*, 447. 12 *Mass.* 252.    17 *Ib.* 461.    *Ang. & Ames*, 373.    *Dudley*, *Ga.* 132.    1 *McMullan*, 413.    6 *John.* 93.    1 *Hill's S. C. Rep.* 36.    1 *McCord*, 346.    3 *McCord*, 374.    1 *Nott & McC.* 527, 8.    *Statutes at Large of S. C. pp.* 366, 414, 487, 497, 529, 628.    2 *Bailey*, 671.    *Frederick vs. The City Council*, 5 *Ga. Rep.* 561.    12 *Mass.* 268.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This writ of error is brought to test the validity of an ordinance of the corporation of Savannah, laying a tax upon *income ;* and the single question I propose to discuss is, Have the Mayor and Aldermen of that City the power, under their charter, to impose this tax ?

It will not be disputed that *income* is a legitimate subject of taxation. The State of Georgia, in the exercise of its law-making power, may assess such a tax, and may delegate the authority to do so to a municipal corporation. The only inquiry here is, Has the right been conferred in the present instance ? Now, the burden is upon the corporation to show the grant, by express words, or necessary implication. For, otherwise, it cannot be justified in the exercise of this high prerogative of sovereignty, of taxing private property without the consent of the owner.

We will proceed, then, to examine, in their chronological order, the several Acts of the Legislature, passed in reference to this subject, to ascertain what taxing power has been bestowed by the Legislature upon this corporation. There are four Statutes upon this subject; the first, the Act of 1787, (*Mar. & Crawford*, 121;) the second, the Act of 1805, (*Clayton*, 243;) the third, the Consolidation Act of 1825, (*Dawson*, 464;) and the fourth, the Act of 1838, (*Pamphlet Laws, p.* 64.) It is conceded that these Acts are all in force; and, consequently, if the power is in either of them, it may be rightfully exercised by the Mayor and Aldermen.

The 4th section of the Act of 1787 provides, " that it shall and may be lawful for the said Wardens, or a majority of them, yearly and every year, and oftener, if occasion may require, to make, lay and assess one or more rate or rates, assessment or assess-

ments, upon all and every person or persons, who do or shall inhabit, hold, use or occupy, possess or enjoy any lot, ground, houses or place, building, tenement or hereditament, in any square, street or place, within the limits of the Town of Savannah, or hamlets thereof, for raising such sum or sums of money as the said Wardens, or a majority of them, shall, in their discretion, judge necessary for and towards carrying this Act into execution."

The construction of this Act came directly before the Convention of Judges, in the case of the Bank of the State of Georgia *vs.* The Mayor and Aldermen of the City of Savannah, in 1832, (*Dudley*, 136;) and that able Bench there held, that the Act of 1787, " authorized a tax *only* upon lots of ground or buildings within the City, or upon persons, in respect to this species of property, by reason of their owning, occupying or inhabiting the same." This interpretation we believe to be correct; and the procurement of the passage of the subsequent Acts of 1805, authorizing a tax upon " all persons and property," and of 1825, to tax " all real and personal estate," is conclusive that the corporation itself put this restrictive meaning upon its own powers under the previous charter. We conclude, then, that the power to tax *income* is not found in this Act.

The 1st section of the next Act, of 1805, authorizes the Mayor and Aldermen to raise and establish a regular watch, and for the purposes of paying and maintaining the same, the second section declares that they may "assess and levy an annual tax on all persons and property within the said City, liable to pay tax, by the general tax law." Here it is admitted, power is conferred to tax all persons and *property ;* but the power to tax *property*, is expressly limited to *such property* as was liable to pay tax, by the general tax laws of the State. But *income* was not liable to pay tax, by the general tax laws of the State, in 1805; *nor, indeed, at any other time.* Therefore, the power to tax *income*, was not included in this grant.

The 7th section of the Act of 1825, authorizes the Mayor and Aldermen, for certain purposes therein enumerated, to raise any sum or sums of money, " by a poll tax, or by tax and assessment, upon all *real and personal estate,* within the corporate limits of the City." Does this power to tax property, generally,

here denominated real and personal estate, confer the right to tax *income?*

[1.] The subject of taxation has been, very properly, divided into three classes—capitation, property and income; and this distinction is recognized, not only by all writers on political economy, but in the general tax laws of all Governments; and when one or more is mentioned or treated of, the other is never intended. And the point to be decided is, not whether *income* may not, possibly, be comprehended under the general name of property, but whether such is its meaning, and such was the design of the Legislature, in this Act?

[2.] I am aware that it has been held in South Carolina, that the City Council of Charleston, under their charter, to make assessments on the inhabitants of Charleston, or those who hold *taxable property* within the same, have authority to tax *income*—and very properly; for *income* is *taxable property* by the general tax laws of that State—and had been, if we mistake not, from the first Act upon the subject, in 1777, down to 1783, the year when the charter to the City of Charleston was passed. But, in Georgia, notwithstanding the mind of the Legislature has been, at each successive session, intensely occupied with this most exciting and engrossing topic, to-wit, the best mode of raising taxes; still, up to the year 1825, and even to the present period, the State has never adopted the policy of gathering taxes from pursuits and employments. And if she has not seen fit to tax the commissions of executors and administrators, in any other part of our widely extended limits, why should she delegate this power, to be exercised over this class of citizens, in the City of Savannah? I can readily conceive, that there may be local subjects of taxation, which would not apply to any other place or section, or any other portion of our people; but this is not true of callings, common to all; and to warrant such a supposition, the power thus claimed should most manifestly appear to have been delegated. Nothing short of express words or unavoidable inference, will answer the purpose. The history of the legislation in the State, in reference to the subject matter of a particular Statute, may be referred to, as tending to aid in the construction to be given to the Statute. *Henry vs. Tilson,* 17 *Vermt. R.* 479.

[3.] But when we scrutinize closely other portions of this Act, we are fully persuaded, that the Legislature did not intend to in-

clude *income*, under the grant to tax "real and personal estate." By subsequent sections of the Act of 1825, the regulation of taverns and granting licenses, taxing vendue masters and peddlers, and persons vending goods, wares and merchandize, in the City, are powers specifically conferred. But this would have been unnecessary, if, under the general grant to tax all real and personal estate in the previous section, the corporation had the power to tax all private business. "We apprehend it cannot be pretended," say the Convention of Judges, in the case already cited, "that under a general power to tax real and personal estate, the City acquired a right to tax offices, professions and employments of every description; and it was not the legislative understanding, as is manifested from the special authority given in the same Act, to tax particular occupations. The distinction is clear and sound between what may be properly and strictly considered property, and rights and interests which are only the sources of emoluments and profits, and from which property may be derived." *Dudley*, 137, 138.

Again. There is a *locality* given to the real and personal estate to be taxed. It must be within the corporate limits of the City—that is, *visible possessions;* and by the repetition of the same terms, in the very next section, a key is furnished to the understanding of the Legislature, in the use of the words, "real and personal estate." In construing Statutes, Courts will look to the language of the whole Act, and take it for granted, that the same expressions import the same sense, whenever they occur in the same Act, unless there be something which requires them to be used in a different meaning. Now, in the very next section (8th) power is given to the City of Savannah, and the hamlets thereof, "to purchase any *real* or *personal estate,* for the use and benefit of the corporation." Here, undoubtedly, *income* was not intended to be included in the expression, real and personal estate; hence, we infer, that it was not in the mind of the law-maker, when the same phraseology was employed in the preceding section. Taking the two sections together, we cannot resist the belief, that it was the design of the Legislature to authorize a tax merely on real and personal property, which was visible—which was located within the City—and which, too, was the subject matter of sale and transfer. Such are the words, in their ordinary sense, and such the spirit of the Act.

[4.] This may be thought a close construction of the charter; but when we recollect that, in the construction of Statutes made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their express words, or their clear import: 4 *Mass. Rep.* 145. *Ib.* 473. 2 *Cowen*, 42.

[5.] And that Statutes which impose restrictions upon trade or common occupations, and which levy an excise or tax upon them, must be construed strictly: 9 *Pick.* 414.

[6.] And that Statutes, levying duties or taxes upon subjects or citizens, are to be construed most strongly against the Government, and in favor of their subjects or citizens; and their provisions are not to be extended, by implication, beyond the clear import of the language used: 3 *Story*, 369.

[7.] And that revenue laws are neither remedial Statutes nor laws founded upon any permanent public policy, and are not, therefore, to be literally construed:

[8.] And hence, whenever there is a just doubt, that doubt should absolve the tax-payer from his burden: *Ib.*

We will hold that the Legislature intended nothing beyond what their language, in its fair and usual meaning, will indicate; and, if the terms of their enactment have not embraced the object contended for, the power is with them, by additional Act or Acts, to extend them. The construction which would confound *income* with *property* in a tax law, is quite too refined and subtle, when designed to operate upon the public at large, and where they are supposed to be used in the senses belonging to the popular language of common life and every-day business.·

In construing these several Statutes, we have confined our examination to the *subject matter* only. But we must not overlook the *objects* for which the taxing power is conferred; for, while the Legislature may have been willing to grant the right to tax, for one purpose, it may have refused to bestow it for another and different object. Hence, we find that each of the three Acts which we have had under consideration, are limited as to the objects for which the tax authorized to be levied was to be imposed. The Act of 1787 empowered the assessment of the taxes therein specified, "to carry into effect such regulations as might be conducive to the good order and government of the Town of Savannah, and the hamlets thereof." The Act of 1805, was "to assess and

levy a tax for the purpose of establishing a regular watch in the City" of Savannah; and the Act of 1825 was to raise money for the use of the City, " in all matters of internal police, and general safety, as respects health, fires, City guard, salaries of officers, and any other exigencies *usual* to incorporated Cities."

Now, it is disclosed to this Court, in the record before us, that one of the main purposes of this income tax, was to meet the heavy liabilities of the City, on account of its subscription to the stock of the Central Rail Road.   This is distinctly set forth in the ordinance of January, 1842, of which the ordinance of November of the same year, and a portion of which is transcribed in the bill of exceptions, is amendatory.   The presiding Judge certifies that he pronounced his judgment in view of all the tax ordinances passed by the corporation.   Concede, then, that the power had been given to the Mayor and Aldermen to impose an *income* tax for any or all of the various objects enumerated in the Acts of 1787, 1805 and 1825.   Admitting, in other words, that the power was delegated over the *subject matter* of this tax, still it would not be allowable to tax income, to meet the liability of the City for its subscription to the stock of the Central Rail Road; there being neither a specific nor general grant, in any of these Acts, to that effect.

In 1838, however, the Legislature conferred on the corporation, authority to obtain money on loan, " on the faith and credit of the City, for the purpose of contributing to works of internal improvement."   What does this grant imply?   Not only the right to pledge the property of the City, but to resort to all the legitimate means of taxation bestowed by their charter, to maintain and redeem this " faith and credit."   Still, the right to tax income, even for this purpose, has not, as we have attempted to show, been delegated, however necessary and proper it may appear to be to the City Authorities, to meet their engagements.

[9.] I have not deemed it necessary to consider the Act of the present session of the General Assembly, (1849,) explanatory of their previous legislation upon this subject, and which has been read, though not seriously relied on, by counsel in their argument for the plaintiffs in error.   For, while we are among the last persons who would be inclined to impair the legislative power of the State, one of the most useful, as well as honorable, in all Governments, and would be among the foremost to support and

construe favorably all its Acts not prohibited by paramount authority, yet *law*, from its very nature, must be confined to *subsequent* occurrences—a *rule* for *future cases*. It cannot look back, therefore, upon interests already settled, or events which have already transpired. By Mr. Justice *Woodbury*, in *Merrill vs. Sherburne*, 1 *New Hamp. R.* 199. See also, 7 *Johns. R.* 495. 1 *Bay*, 107. *Bacon. Statute*, 6. 7 *Mass. R.* 385. In this State, as well as in all republics, it is not the *Legislature*, however transcendant its powers, who are supreme—but the *people*—and to suppose that they may violate the fundamental law, is, as has been most eloquently expressed, "to affirm that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that men acting by virtue of delegated power may do, not only what their powers do not authorize, but what they forbid." The law is made by the *Legislature*, but applied by the Courts. The law prescribes a new rule for new controversies, but never interferes with the past or the present, because no rule of conduct can, with consistency, operate upon what occurred before the rule itself was promulgated. *Ib.*

Let the judgment below stand affirmed.