PEOPLE ex rel. UNION SULPHUR CO. v. GLYNN, State Comptroller.

(Supreme Court, Appellate Division, Third Department. March 19, 1908.)

1. TAXATION—FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN STATE.
　　A foreign corporation, whose mine and plant are located in another state, is doing business in New York, so as to render it liable to the license tax and franchise tax imposed on foreign corporations for the privilege of doing business in the state, based on the amount of capital therein, where it has its only business office in the state at which the entire negotiation for the sale of its product is conducted.
　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 286.
　　For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

2. COMMERCE—SUBJECTS OF REGULATION—TAXATION OF CAPITAL STOCK OF FOREIGN CORPORATION.
　　The license tax and franchise tax imposed on foreign corporations for the privilege of doing business in the state, based on the amount of capital employed therein, are not a burden on interstate commerce, notwithstanding the capital is used in a business which in its nature constitutes commerce between the states.

3. TAXATION—FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN STATE.
　　The capital stock of a foreign corporation originally issued was $200,000, which was invested in another state. In that state there was invested, in addition, $700,000, and in New York, $500,000. Held, that since the $500,000 invested in New York, though not part of the original capital stock, is deemed capital stock for the purposes of taxation, it should be deemed capital stock for the purpose of determining the percentage of taxation, and to reach a just proportion, therefore, the per-

centage should be reckoned on five-fourteenths of $200,000 as the amount of the corporation's capital stock employed in the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 290.]

Certiorari by the people, on the relation of the Union Sulphur Company, against Martin H. Glynn, as Comptroller, to review his determination of a license tax and of a franchise tax on the relator's capital employed within the state for the year ending October 31, 1905. Determination of the Comptroller reversed, and the matter remitted.

The relator is a foreign corporation organized under the laws of the state of New Jersey, with an authorized capital stock of $400,000 and issued capital stock of $200,000. The business of the relator is the mining and selling of sulphur. Its mines and mining apparatus, tools, and plant are located in the state of Louisiana, where its investment amounts to $951,281. The relator maintains an office at 82 Beaver street, New York, for the purpose of soliciting orders and selling products and looking after its business generally.

During the year ending October 31, 1905, the company declared dividends amounting to $190,000, being 95 per cent. on the issued capital stock of $200,000. It paid the running expenses of the office maintained in New York, approximating $40,000, and maintained during the year in question in this state an average bank balance of $437,840.47, from which it paid its current expenses.

The Comptroller found the capital employed in this state to be at least $200,000, and assessed a franchise tax of 23¾ mills, being a rate of one-fourth of a mill on each 1 per cent. of the dividends declared, and fixed a license fee of $250, being at the rate of one-eighth of 1 per cent. of the capital employed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Cornelius C. Beekman, for relator.
William S. Jackson, Atty. Gen., for defendant.

SMITH, P. J. The relator contends, first, that, it is not doing business in this state, but this is its only business office. All of the products of the mills are sold from this office, and moneys collected. It seems to me undoubted that the entire negotiations of the sale of the product of defendant's mine is the doing of business within the meaning of the statute.

The relator further contends that the capital of this corporation cannot be taxed, because it is wholly engaged in interstate commerce. The products sold must all be transported from Louisiana into this state and other states where a purchaser is found. It would seem, therefore, that the business of the corporation was purely an interstate business, and that its capital was so employed.

There is much confusion in the books as to the right of a state to levy taxes upon corporations engaged in interstate commerce. This confusion has in part arisen from a misuse of terms. The statute imposes this tax "for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state." It has been held that this tax upon a foreign corporation is a tax upon its business, and it is argued that to tax the business of a foreign corporation engaged in interstate commerce places a burden upon interstate commerce. By whatever name this tax may be describ-

ed, it is, as stated in the statute, a tax "for the privilege of exercising its corporate franchises within our state," and it is based upon the amount of capital stock which is employed within this state, and as such I think is taxable, notwithstanding that capital stock is used in a business which in its nature constitutes commerce between the states.

In Old Dominion Seamship Co. v. Virginia, 198 U. S. 305, 25 Sup. Ct. 686, 49 L. Ed. 1059, the question arose as to the right to tax vessels which were engaged in interstate commerce. Justice Brewer, in speaking for the court, says:

"The facts being settled, the only question is one of law. Can Virginia legally subject these vessels to state taxation? The general rule is that tangible personal property is subject to taxation by the state in which it is, and no matter where the domicile of the owner may be. This rule is not affected by the fact that the property is employed in interstate transportation. Pullman's Palace Car Company v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613, in which Mr. Justice Gray spoke for the court and said: 'It is equally well settled that there is nothing in the Constitution or laws of the United States which prevents a state from taxing personal property, employed in interstate or foreign commerce, like other personal property within its jurisdiction.' "

In Postal Telegraph Co. v. Adams, 155 U. S. 695, 15 Sup. Ct. 269 (39 L. Ed. 311), Chief Justice Fuller, in writing for the court, says:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state (the exaction, therefore, not being susceptible of exceeding the sum which may be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not in itself subjected to restraint or impediment."

In People ex rel. S. T. C. Co. v. Wemple, 133 N. Y. 323, 31 N. E. 238, where the relator's manufactory was out of the state from which all the goods came, nevertheless the capital of the corporation was held taxable. In People ex rel. S. C. O. v. Wemple, 131 N. Y. 64, 29 N. E. 1002, 27 Am. St. Rep. 542, the capital of a foreign corporation employed within the state was held taxable under similar circumstances. At page 71 of 131 N. Y., page 1003 of 29 N. E. (27 Am. St. Rep. 542), O'Brien, J., in writing for the court, says:

"The property of a foreign corporation engaged in foreign or interstate commerce may be taxed equally with like property of a domestic corporation engaged in the same business; but a tax or other burden imposed upon the property of either corporation because it is used to carry on that commerce, or upon the transportation of persons or property, or for the navigation of the public waters over which the transportation is made, is invalid and void, as interference with and obstruction of the power of Con-

gress in the regulation of commerce. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 211, 5 Sup. Ct. 826, 29 L. Ed. 158.

Within these authorities we think this relator is clearly taxable within this state. The amount of the tax is regulated by the capital employed within the state, and does not exceed its personal property therein for which the corporation might itself be directly taxed. By the terms of the statute it is subject to no other tax for personal property. The payment of the tax is not made a condition precedent to the carrying on of this interstate business, nor is it levied upon interstate traffic as such; but it is a tax levied upon domestic and foreign corporations alike, whether engaged in intrastate or interstate commerce. In State of New York ex rel. Penn. R. R. Co. v. Knight, 192 U. S. 21, 24 Sup. Ct. 202, 48 L. Ed. 325, the court was reviewing a tax placed upon the relator, measured by the gross earnings of a cab service, which was attached to an interstate service from the state of New Jersey into the state of New York. It was there held that, as the cab service was separate and independent from the train service and was wholly performed within the state, it was taxable. It is strongly intimated that if that service were a part of the through service, and tickets were bought which would include transportation upon the cabs and upon the trains, such taxation would be a regulation of interstate commerce. It will be borne in mind, however, that the tax there imposed was under a different section of the statute. That tax was imposed under section 184 of the tax law (Laws 1896, p. 857, c. 908), and was indirectly imposed upon the gross earnings of the relator within the state. A tax upon gross earnings is more nearly a regulation of traffic than a tax upon capital employed within the state. In the opinion of Chief Justice Fuller, above cited, "a tax upon the receipts derived from interstate commerce" is held to be a regulation of interstate commerce. So that, even if this case can be held to be an authority for the invalidity of a tax upon the gross earnings of a corporation engaged in interstate commerce, it is no authority against the validity of a tax based upon the amount of capital stock employed within the state.

The capital stock originally issued was only $200,000. It appears that this $200,000 was invested in Louisiana, in the mines. In that state there was invested, in addition, however, $700,000, and $500,000 was invested in this state. The $500,000 invested in this state, although not part of the original capital stock, is deemed capital stock for the purposes of taxation. If the capital actually invested be deemed capital stock for the purposes of taxation, it should then be deemed capital stock for the purpose of determining the percentage of taxation. To reach a just proportion, therefore, the percentage should be reckoned upon five-fourteenths of $200,000 as the amount of relator's capital stock employed within this state. This is the rule which is now prescribed by the statute. Although the statute has so prescribed since this tax was levied, it is a fair basis upon which this tax should be estimated.

The determination of the Comptroller is therefore reversed, and the matter remitted to the Comptroller for determination upon the principles stated in this opinion.

Determination of the Comptroller reversed, with $50 costs and disbursements to the relator, and matter remitted to the Comptroller·for determination upon the principles stated in the opinion. All concur.