(91 South. 744)

No. 24543.

## BOWMAN–HICKS LUMBER CO., Inc., v. COLE, Assessor.

## SAME v. BOARD OF STATE AFFAIRS et al.

(April 25, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⬦319(2)—**Taxpayer complaining of overvaluation has burden of proof.**

Officers assessing property for taxation are presumed to have pursued the proper method of ascertaining its value and properly performed such duty, so that a taxpayer, complaining that his property is overestimated in value, bears the burden of establishing a proper foundation for his complaint, by proof of convincing weight.

2. **Taxation** ⬦499—**Evidence insufficient to show overvaluation of sawmill plant.**

Evidence *held* insufficient to show that a sawmill plant was overvalued by the assessing officers.

3. **Taxation** ⬦462—**Statute as to failure to make return applies to property omitted and has not been repealed.**

Act No. 182 of 1906, § 3, under which a taxpayer, making no return, is estopped from contesting the correctness of the assessment, applies to property omitted from the return made and was not repealed by Act No. 140 of 1916, § 15, as amended by Act No. 211 of 1918, requiring police juries to sit as boards of reviewers, on the assessment of all property not theretofore assessed by the state board of appraisers.

4. **Taxation** ⬦397—**Accounts for sales on orders accepted at corporate domicile in another state held not taxable.**

Under Act No. 15 of Extra Sess. 1917, § 2, providing for the taxation of credits of non-resident corporations from · business done in the state, accounts arising from sales on credit, of lumber shipped from manufacturing plants in Louisiana, on orders sent to the corporate domicile in Kansas City for acceptance, from which place deliveries were ordered made, did not arise from business done in the state and were not taxable.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Jerry Cline, Judge.

Two actions, one by the Bowman-Hicks Lumber Company, Inc., against Conrad C. Cole, Assessor, and the other against the Board of State Affairs and others. From the judgment, defendants appeal. Affirmed.

A. V. Coco, Atty. Gen., and P. C. Smith, of Oberlin (Harry P. Sneed, of New Orleans, of counsel), for tax collector and appellants.

McCoy & Moss, of Lake Charles (Baker, Botts, Parker & Garwood, of Houston, Tex., of counsel), for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

LECHE, J. Two suits involving the validity and correctness of plaintiff's assessments, the one for the year 1919 and the other for the year 1920, of the same property, except as to one item, were consolidated for trial and argument, and form the subject of this appeal.

Plaintiff is a corporation having its domicile at Kansas City, in the state of Missouri. It owns a large amount of timber lands in the parish of Allen in this state, a sawmill, planing mill, and all the equipment necessary to operate a lumber manufacturing plant. The output of the plant, which has been in operation since about the year 1912 and is still in operation, is sold in open market as produced, in the shape of rough and dressed lumber. In these two suits, plaintiff seeks to have part of its assessment, for the years 1919 and 1920, reduced, and to have another part thereof canceled, as made upon property not subject to taxation in this state. Many of the issues involved in the pleadings, as filed originally, have been abandoned or settled to the satisfaction of both parties, and the questions to be decided on this appeal are reduced to the proper valuation of plaintiff's sawmill, its planing mill, its logs in pond, and to the validity of an assessment, upon plaintiff's open accounts and credits.

For the year 1919, plaintiff returned its assessments upon its sawmill plant at $105,000, upon its planing mill at $23,500, but made no return on its logs in pond nor upon its open accounts and credits. The state tax assessor raised the assessment on the sawmill to $144,000, and on the planing mill to $36,000, and also assessed plaintiff for logs in pond, $12,899, and for credits, $100,000.

For the year 1920, plaintiff's assessment was raised on its sawmill from $95,000 to $144,000 and on its planing mill from $20,000 to $36,000. It was also assessed for credits in the sum of $73,000. The assessment for its logs in pond, for the year 1920, was raised from $21,378.78 to $41,438.

The district court annulled the assessments upon credits for both years 1919 and 1920, and reduced the assessment for logs in pond for the year 1920 to $21,378, and, from this judgment, the assessing officers of the state have appealed. Plaintiff has answered the appeal and prays that the assessments on the sawmill and planing mill be reduced to the amounts originally returned by it and that the assessment for logs in pond for the year 1919 be reduced to $3,435.

## Opinion.

[1, 2] Officers, charged with the function of assessing property for the purpose of taxation, are presumed to have pursued the proper method of ascertaining its value and to have properly performed that duty, so that a taxpayer, who complains that his property is overestimated in value, bears the burden of establishing, by proof of convincing weight, proper foundation for his complaint. Mr. George R. Hicks, vice president and secretary of the plaintiff company, who made the original estimates turned over by plaintiff to the assessor, says that the mill plant was erected in 1912, partly with old and partly with new material, and the cost credited annually with depreciation. He does not say what was the original cost, but the record shows that the valuation tendered in 1919 was $105,000 and in 1920, it was $95,000. He does not make it clear what percentage of the original value was adopted by the company for depreciation, but, judging from the deduction made in 1920 from the value fixed in 1919, it seems that the yearly depreciation was fixed at approximately 10 per cent. Again Mr. Hicks argues, in his testimony that the value of a sawmill plant decreases in proportion to the decrease of standing timber which is accessible to it for manufacturing purposes. There is sound reason in the proposition that a manufacturing plant depreciates in value by constant usage, and that its value is also affected by the shortage of supply of raw material, but it can hardly be reasonably contended that these are the only factors having any bearing upon such value. It may be that some parts of the mill need yearly changes on account of wear, but there are other parts, and no doubt the larger and most important parts, that are barely affected by usage. It can hardly be conceived that plaintiff has failed to make such changes and to maintain its plant in good running order, though there is no evidence in the record on that subject. Without the assistance of expert testimony, it is impossible for a court of justice to say what would be the proper percentage of depreciation to apply in a case of this kind. It is, however, clear to us that plaintiff has failed to substantiate, by clear proof, the original value of its plant, as well as the grounds upon which it bases a yearly depreciation of nearly 10 per cent. Plaintiff's next contention, that a sawmill plant decreases in value in proportion to the decrease of timber accessible to it for manufacturing purposes, is also advanced by the witnesses Sheppard, Muth, and Wilson. These witnesses are all engaged in the manufacture of lumber, and they contend that a plant should be valued

on a basis of $1 for every thousand feet of available timber to be cut, and they say this regardless of the varying and fluctuating values of timber. While it is true that available timber may be considered as an element in fixing the value of a plant, yet, if the rule thus stated by these witnesses be pursued to a logical conclusion, the result will be absurd, for, when all the timber is cut, the mill becomes absolutely worthless.

Our learned brother of the district court wrote a well-reasoned and elaborate opinion in this case, and he concludes that—

"the valuation given by the witnesses for the plaintiff are not shown to have been arrived at by a process of reasoning which is correct; that elements affecting values were omitted from their consideration; that there is no evidence that these elements were not duly considered, and the valuations properly derived therefrom by the assessing authorities; and that, therefore, the valuations fixed by them must be presumed to represent the correct actual cash values."

In this finding we fully agree.

[3] Plaintiff made no return for the year 1919 on the value of logs in pond. Under the provisions of section 3 of Act 182 of 1906, it became estopped after April 1st, from contesting the correctness of that assessment. In argument, plaintiff contends that this provision of the statute does not apply, where the taxpayer has filed an erroneous list, and it refers, in support of that contention, to the case of Bowman-Hicks v. Oden, 147 La. 881, 86 South. 313. The opinion in that case, commenting upon section 15 of Act 140 of 1916, as amended by Act 211 of 1918, in regard to the meaning of the expression "property not heretofore assessed by the state board of appraisers" says arguendo, of that expression "(which as we take it, includes omitted property)." The section (15) referred to, providing for the sitting of police juries as boards of reviewers, says they—

"shall likewise sit as a board of reviewers on the assessment, for state purposes on all property not heretofore assessed by the state board of appraisers," etc.

The state board of appraisers was created to assess railroad, telegraph, telephone, sleeping car, and express companies, and it is evident that the quoted expression was intended to confine the jurisdiction of police juries, sitting as boards of reviewers, to property not assessed by the state board of appraisers, and to exclude from their jurisdiction property belonging to railroad, telephone, telegraph, sleeping car, and express companies, and was not intended by the lawmaker to repeal section 3 of Act 182 of 1906. The purpose of the Legislature, in enacting section 3 of Act 182 of 1906, was to penalize the taxpayer who fails to produce a list of his taxable property or who purposely or inadvertently omits any of his taxable property from such list. It was recognized as constitutional, and it was enforced in the cases of Calcasieu Trust & Savings Bank v. Wetherell, 139 La. 454, 71 South. 765, and Marston v. Elliott, 138 La. 574, 70 South. 519. We therefore believe the trial judge properly refused to entertain plaintiffs' contest on the item "logs in pond" in its assessment for the year 1919.

The same item "logs in pond," for the year 1920, was reduced by the trial court from the amount fixed by the assessor to that fixed by plaintiff in its return. The defendant does not, in argument, contest the correctness of that ruling.

[4] The last items in contest, the credits assessed against plaintiff for the years 1919 and 1920, is sought to be justified under the provisions of section 2 of Act 15 of the Extra Session of 1917, which reads as follows:

"That the notes, judgments, accounts and credits of such non-resident persons, firms, corporations, partnerships, associations, or companies doing business in the State of Louisiana, originating from the business done in this State, be and the same is hereby declared to be property with its situs within the State, and subject to taxation at the business domicile in this State of the said non-resident person, firm, corporation, partnerships, association, or company, or their business agent or repre-

sentative, under the same rules and in the same manner that property of a like nature is assessed and taxed within the State of Louisiana."

The facts are that plaintiffs' domicile is in Kansas City, Mo., where it maintains its principal business office. Its managers superintend all of its business from the Kansas City office, where its books, in which are entered all of its accounts and credits, are also kept. The output of its lumber manufacturing plants, which are located in Louisiana, is sold upon orders which must be accepted in Kansas City, from which place deliveries are ordered to be made in various parts of the country, all shipments, however, originating from its plants in Louisiana. Deliveries are made all over the United States outside of this state, purchases by Louisiana customers are sometimes made from the mill but such sales may only be made for cash and constituted, for the year 1920, not over 3 per cent. of the output of its plant.

Plaintiff does not question the right of the state to tax credits and open accounts, as representing property, but it contends that its property, represented by credits and open accounts, has no situs in this state and is not therefore taxable here. Our learned brother of the district court so holds, in his well-considered and logical opinion, and it is this feature of his judgment which is most strenuously contested by defendant.

It is not questioned that persons, firms, or corporations may do business in states other than that of their domicile, but plaintiff's contention is that its business, out of which its accounts and credits arise, is done in the state of Missouri. The act invoked by the tax-assessing authorities authorizes the taxation of credits arising from business done in this state. "Doing business," in the sense in which it is applicable to plaintiff in this case, means selling the product which it manufactures in its lumber plants, and it

appears, from the uncontested facts hereinbefore stated, that plaintiff's sales, from which taxable credits arise, are considered, made, and completed in Kansas City, at plaintiff's actual domicile, and that the only incident connected with these sales, which takes place in Louisiana, is shipment, which is made from plaintiff's mills. Under the language of the act, the credits do not arise from business done in this state, and they are therefore not taxable in this state. This conclusion in no wise conflicts with the decision of this court in General Electric Co. v. Board of Assessors, 121 La. 116, 46 South. 122, but, on the contrary, is supported by the reasons advanced in that opinion.

For these reasons, the judgment appealed from is affirmed.