25821. STATE REVENUE COMMISSION *et al.* v. EDGAR BROTHERS COMPANY.

DECIDED MARCH 17, 1937.

*M. J. Yeomans, attorney-general, B. D. Murphy,* for plaintiffs. *Park & Strozier, Orville A. Park Jr.,* for defendant.

BROYLES, C. J. On August 28, 1935, the State Revenue Commission issued an execution against Edgar Brothers Company for income taxes alleged to be due to the State for the year ending December 31, 1929. The defendant in fi. fa. filed an affidavit of illegality averring, in part, that the claim and reassessment was barred by the statute of limitations; and that it was not subject to income tax, under the act of 1929, on business done in Georgia. The State Revenue Commission filed a traverse of the affidavit of illegality. The case was submitted to the judge without the intervention of a jury. The court held: (1) That "the assessment and execution issued thereon by the plaintiff against the defendant is barred by the statute of limitations;" and (2) that under the "act of the legislature of 1929, the plaintiff is not authorized to assess the income tax against the defendant, for the reason that the facts in this case show that the income derived from the operation of the defendant's plant, as described in the pleadings, depended on the sale of the manufactured products after they arrived in other States;" and that the act of 1929 did not contain sufficient provisions for reaching incomes derived from such source. On this judgment the plaintiff in fi. fa. assigns error.

The income-tax act of 1929 (Ga. L. 1929, p. 92) made no provision as to the time for issuing executions for failure to return or pay income taxes. The provision in that act that the State may levy and collect "an income tax similar to that of the United States" does not mean that the period of limitation as to an execution is similar to that of the United States; but even if the limitation period prescribed by the Federal act did apply to the act of 1929, the execution in the instant case would nevertheless be barred by the statute of limitations. The act of 1929 was incomplete in some respects; and since the Supreme Court sustained the constitutionality of an income-tax law *Featherstone* v. *Norman*, 170 *Ga.* 370 (153 S. E. 58, 70 A. L. R. 449), the legislature, in order to rectify the defects of the 1929 law, one of which was the lack of a statute of limitations as to an assessment and execution, enacted a new income-tax law (Ga. L., Ex. Sess., 1931, p. 24), which expressly repealed the act of 1929 (p. 59, sec. 62), except "for the assessment and collection of all taxes which have accrued or may accrue under the income-tax act of 1929, and for the collection of all penalties which have accrued or may accrue in relation to said act" (p. 59, sec. 63). This simply means that the State is reserving the right to collect any taxes or penalties already accrued under the 1929 act, and has no reference to a limitation period for the assessment and collection of such taxes, as the act of 1929 contained none.

The act of 1931, p. 50, sec. 35, provides that the commissioner may determine if "there is a *deficiency* in respect of the tax imposed by this act [of 1931] *or any prior act;*" and sec. 35(f) on p. 51 provides, that, "as used in this act, the word 'deficiency' means the amount by which the tax imposed by this act *or any prior act* exceeds the amount shown as the tax by the taxpayer upon his return, or if no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, the amount determined by the commissioner to be the correct amount of the tax." (Italics ours.) Since the 1931 act, in dealing with the deficiency, provides for the collection of amounts due under "any prior act," and the act of 1929 was the only prior act dealing with an income tax, and since the 1929 act failed to provide a time for issuing executions on account of deficiencies, it is clear that deficiencies under the prior act of 1929 are intended to be

collected through the machinery of the 1931 act. The 1931 act (sec. 36(a) on p. 51) stipulates that "Except as provided in subsection (b) of this section, the amount of income taxes imposed by this act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." Subsection (b), above referred to, relates to collection without assessment in case of a fraudulent return, and has no bearing on the instant case, where the assessment was not made within the three-year limitation period above set out. The 1929 income taxes of the defendant were actually paid on June 15, 1930, and the State Revenue Commission did not issue the execution until August 28, 1935. It thus appears that the action was barred by the statute of limitations. That portion of the act of 1931 fixing the three-year period of limitation as to a deficiency due under "any prior act" is remedial, and not retroactive. It makes no change in the vested rights under the 1929 act. It makes no change in what is or is not subject to income tax under the 1929 act. It applies merely to the remedy of the State in collecting that tax which had accrued under the 1929 act. In *Cox* v. *Berry,* 13 *Ga.* 306, 310, it was said: "Acts which relate to remedies only have been ruled by the highest authority in this Union, not to be violative of the constitution, and it has also been over and over again ruled that acts which relate to limitation terms belong to that class." See also *Atlanta, K. & N. Ry. Co.* v. *Wilson,* 119 *Ga.* 781 (47 S. E. 366); *Lamb* v. *Howard,* 150 *Ga.* 12, 16 (102 S. E. 436); *Guest v. Atlantic Coast Line R. Co.,* 37 *Ga. App.* 102 (139 S. E. 97). Counsel for the revenue commission insist that the limitation period prescribed by the 1931 act does not apply to the 1929 act, and that there is no limitation period applicable to the 1929 act, or else the limitation period is seven years. If this contention were correct, the State would be in the anomalous position of having the three-year statute of limitations bar the younger claim sooner than the older one. It would bar the collection of income taxes due for the year 1931, while collection of income taxes for 1929, due two years sooner, would not be barred by the statute of limitations. Seeking the true intent of the lawmaking body, and putting a reasonable construction on the act of 1931, we are forced to the conclusion that it was not the inten-

tion or purpose of the legislature to make the statute of limitations run against the younger claim sooner than against the older one. The maxim "nullum tempus occurrit regi," cited by counsel for the plaintiff in error, applies only in the absence of a legislative provision to the contrary, and such provision was made by the legislature in the act of 1931.

The record fails to disclose when the assessment for the 1929 income taxes in the instant case was made; but the tax fi. fa., dated August 28, 1935, states that the "amounts have been assessed." It might be presumed that the assessment was made ten days before the date of the execution, as section 39 of the act of 1931 (p. 53) provides that "if any tax imposed by this act *or any prior act* is not paid within ten days after notice and demand from the commissioner, the commissioner shall issue a fi. fa." (Italics ours.) However, we consider it unnecessary to call for a diminution of the record, as there is no contention that the assessment of 1929 taxes was made during the three-year limitation period, the contention of the revenue commission being that the three-year statute of limitation period does not apply to taxes which accrued under the 1929 act, and counsel for the commission conceding in their brief that the assessment was made "more than five years after the time for filing the return." Since the 1929 act (with the exception of the assessment and collection of taxes accrued thereunder before the effective date of the 1931 act) was expressly repealed by the act of 1931, thus leaving the 1931 act as the only State income-tax law in force, and the repealing of the 1929 act and passage of the 1931 act showing that the former act was defective, incomplete or for some reason unsatisfactory to the legislature; and since the 1929 act failed to provide for any period of limitation, and the 1931 act·corrected this defect and provided a period of limitation, and also provided for the assessment and collection of a "deficiency" in the tax imposed by "any prior act," and defined the word "deficiency" as meaning the amount by which the tax imposed by this act "or any prior act" exceeds the amount shown as the tax by the taxpayer upon his return; and this provision of the act of 1931 being remedial, and the execution of the plaintiff in fi. fa. issued August 28, 1935,·being issued after the three-year period of limitation prescribed in the act of 1931, the execution is barred by the statute of limitations.

The second issue raised by the affidavit of illegality, and passed on by the judge in the order on which error is assigned, is whether the income-tax act of 1929 imposes a tax upon the income of the defendant company derived from its business as shown to be conducted. Though we have hereinbefore held that the execution of the revenue commission was barred by the statute of limitations, we deem it proper, under the circumstances disclosed by the record, to pass on this second issue. The substance of the defendant's affidavit of illegality, so far as it relates to this second issue, is that it is a corporation of New Jersey, that its principal or home office and place of business is in New Jersey; that its books and records are kept there and its business transacted there; that it owns certain lands and mineral rights in Georgia, and mines clay thereon, all of the clay being shipped out of the State of Georgia on orders taken by the company at its principal or home office in Metuchen, New Jersey, and at its sales office in the City of New York; that its mining operations are in charge of a superintendent, but it has no officer and no business office in Georgia; that it pays its employees, and for supplies, materials, and fuel, and all other expenses, from moneys sent from the principal or home office of the company at Metuchen, N. J., no money being received or handled by any office or officer in Georgia from the sale of any of the clay mined in Georgia; that orders are taken and clay is sold by the company through its officers at a sales office in the City of New York and the home office in Metuchen, N. J., and clay to fill the orders so taken is shipped from the mines in Georgia as directed by the Metuchen office; that bills for the clay sold are sent out from, and are due and payable at, the Metuchen office, and are collected there, and not in or through any office or officer in Georgia; that the clay is shipped to other States, but none of it is shipped to any point in Georgia or sold to any customer domiciled or doing business in Georgia; and that no income, except from a commissary, accrues to the defendant company from its business done in Georgia, within the meaning of the income-tax act of 1929, imposing an income tax on the business of a foreign corporation done in this State. The affidavit of illegality shows that the defendant company operates a commissary in connection with its mines, and that it has returned and paid the State of Georgia the income tax on the profit made in the

operation of the commissary for the year 1929. It suffices to say that the undisputed evidence sustained the foregoing averments of facts as to the mining and sale of the clay, and the method in which the business of the defendant in fi. fa. was conducted during the year 1929. Indeed, the bill of exceptions recites that counsel for the revenue commission agree to this, but do not agree to the conclusions set forth in the affidavit of illegality, and, on the contrary, insist that the income of the defendant company, under such methods, is subject to tax under the income-tax act of 1929. It is undisputed that the property tax has been paid on the real estate, mines, machinery, and equipment in Georgia, and that the income tax on the income from the commissary has been paid. The issue in this case is as to the tax on the income received from selling the product of the mines in other States.

A subdivision of section 3 of the income-tax act of 1929 (p. 95) provides that "In any case where a non-resident corporation having an office and doing business in this State makes its income-tax return in some other State, such corporation shall make an original return to the tax commissioner of Georgia, *confined to its business done in this State,* upon like principles as are in this section above provided." (Italics ours.) When a corporation mines clay in this State, but has its home office in another State, receives all orders for its product in another State, collects and pays all bills in another State, sells its product to customers in other States, sells to no customer in Georgia, and has no officer in Georgia, is this "business done in this State" within the meaning of the act? The phrase "confined to its business done in this State," as used in the act of 1929, means intrastate business, and not interstate business. A statute of the State of Missouri required express companies to make a statement covering their receipts including all such sums earned or charged for "business done within this State;" and the Supreme Court of the United States, in holding that this statute was intended to include only *intrastate* receipts, said: "This positive and oft-repeated limitation to business done within the State, that is, business begun and ended within the State [was] evidently intended *to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within this State' can not be made to*

*mean business done between that State and other States."*
(Italics ours.)   Pacific Express Co. *v.* Seibert, 142 U. S. 339, 350
(12 Sup. Ct. 250, 35 L. ed. 1035).   A Florida statute provided
that certain towns or counties might impose such further taxes on
various subjects as they deemed proper when the business, profes-
sion, or occupation was engaged in *within such county, city, or
town*; and the Supreme Court of the United States sustained the
Supreme Court of Florida (33 Fla. 162, 14 So. 588, 25 L. R. A.
120, 39 Am. St. R. 99) in holding that this section of the act
"does not apply to or affect in any manner the business of this
company which is interstate in its character; that it applies to
and affects only its business which is done within the State, or
is, as it is termed, 'local' in its character, and it [the Supreme
Court of Florida] has held that under that statute, so long as the
express company confines its operations to express business that
consists of *interstate or foreign commerce, it is wholly exempt*
from the legislation in question.   It has added, however, that un-
der the provisions of the statute, if the company engage in busi-
ness within the State of a local nature as distinguished from an
interstate or foreign kind of commerce, it becomes subject to the
statute so far only as concerns its local business, notwithstanding
it may at the same time engage in interstate or foreign commerce.
In other words, this statute as construed by the Supreme Court of
Florida does not exempt the express company from taxation upon
its business which is *solely within the State,* even though at the
same time the same company may do a business which is interstate
in its character, and that as to the latter kind of business [inter-
state] the statute does not apply to or affect it.   As thus construed
we have no doubt as to the correctness of the decision."   (Italics
ours.)   Osborne *v.* Florida, 164 U. S. 650, 654 (17 Sup. Ct. 214,
41 L. ed. 586).

The foregoing decisions clearly show that a statute fixing a tax
on "business done within the State," or which is "confined to
business done in this State," can not be extended to cover "inter-
state or foreign" business.   The tax on the business of the com-
missary, which was done "solely within the State," was paid by
the defendant company.   See also, in this connection, State *v.*
Rocky Mountain Bell Tel. Co., 27 Mont. 394 (71 Pac. 311);
Converse *v.* Northern Pac. Ry. Co., 2 Fed. (2d) 959; Ratterman

512

*v.* Western Union Tel. Co., 127 U. S. 411 (8 Sup. Ct. 1127, 32 L. ed. 229) ; City of Ogden *v.* Crossman, 17 Utah 66 (53 Pac. 985) ; Moore *v.* Eufaula, 97 Ala. 670 (11 So. 921) ; City of Anniston *v.* Southern Ry. Co., 112 Ala. 557 (20 So. 915) ; Postal Telegraph-Cable Co. *v.* Charleston, 153 U. S. 692 (14 Sup. Ct. 1094, 38 L. ed. 871) ; State ex rel. Beck *v.* Wagener, 77 Minn. 483 (80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. R. 681). That the General Assembly of Georgia recognized that the language "confined to its business done in this State," as used in the act of 1929, limited the tax to intrastate business, is indicated by the fact that the act of 1931 made provision for taxing incomes similar to that involved in this case. However, this portion of the 1931 act could not apply to incomes received under the 1929 act, and render taxable that which was not taxable prior to the passage of the 1931 act, as such provision would undoubtedly be retroactive. As stated by the judge in his order, "The income derived from the operation of the defendant's plant as described in the pleadings depended on the sale of the manufactured products *after they arrived in other States.* The provisions of said act of the legislature were defective in not passing or incorporating in said law of 1929 sufficient provisions for reaching incomes derived from such. The act of 1931 remedied this defect, but did not reach any income derived by the defendant from the business previously to the passage of the said act of 1931. Such a law, as is 'well known, would be an ex post facto law." (Italics ours.) The tax imposed by the 1929 act is expressly "confined to business done in this State," and will not be extended by implication. Ohio *v.* Harris, 229 Fed. 892(3). As stated in *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23, 30, "We will hold that the legislature intended nothing beyond what their language, in its fair and usual meaning, will indicate; and if the terms of their enactment have not embraced the object contended for, the power is with them, by additional act or acts, to extend them," as they did do, in the instant case, by the act of 1931. Even if the express provisions above quoted were not in the act of 1929, and the act were ambiguous, the general rule is that tax acts are to be strictly construed, most strongly against the government and in favor of the taxpayer. *Savannah* v. *Hartridge,* supra; *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (2) (149 S. E. 211) ;

*McIntyre* v. *Harrison,* 172 *Ga.* 65 (2) (157 S. E. 499); *Mystyle Hosiery Shops* v. *Harrison,* 171 *Ga.* 430 (155 S. E. 765); Gould v. Gould, 245 U. S. 151 (38 Sup. Ct. 53, 62 L. ed. 211). Since the home of the defendant company is in another State, and all of the contracts for the sale of the clay are made in another State, and all of the clay is sold in other States, and all of the payments therefor are made in another State and come from other States, the income from such sales is not Georgia income within the meaning of the act of 1929, and is not taxable under said act. See People ex rel. Union &c. Co. v. Glynn, 125 App. Div. 328 (109 N. Y. Supp. 868); Bowman-Hicks Lumber Co. v. Cole, 151 La. 303 (91 So. 744); Singer Mfg. Co. v. Adams, 165 Fed. 877; Baltica Ins. Co. v. Carr, 33 Ill. 608 (162 N. E. 178).

The State Revenue Commission can not collect an income tax from the defendant company on the theory that the company is carrying on a unitary business: (1) because the act of 1929 provides for the collection of an income tax from foreign corporations on intrastate business only (Converse v. Northern Pac. Ry. Co., supra); and (2) because the act of 1929 provides no rule of apportionment to show what percentage of the entire income of the defendant company should be allotted to Georgia on the basis of the unit rule. The power delegated to the tax-commissioner "to make all necessary regulations for carrying out the provisions of this act" does not and could not legally give him the power to create provisions not embodied in the act. He can not create *subject-matter* of taxation. "It is a settled rule that public officers have only such powers as are granted them; that they take nothing by implication; and that the law granting their powers is to be strictly construed." *Baggerly* v. *Bainbridge State Bank,* 160 *Ga.* 556, 561 (128 S. E. 766). The 1916 statute of Virginia was much broader than the 1929 statute of Georgia, and covered "all income including that from business in or out of this State;" and yet the Court of Appeals of Virginia, in Commonwealth v. Lorillard Co., 129 Va. 74 (105 S. E. 683), held that the tax authorities could not devise a method of allocation where there was no statutory authority for such allocation. In that case the court said: "'The assessment being so important, the statutory provisions respecting its preparation and contents ought to be observed with particularity. They are prescribed in order to se-

cure equality and uniformity in the contributions which are demanded for the public service; and if officers, instead of observing them, may substitute a discretion of their own, the most important security which has been devised for the protection of the citizen in tax cases might be rendered valueless.' Cooley on Taxation (3d ed.), 598, 599. . . In the case at bar it does not appear how much of the income was derived from business done in Virginia [Georgia in the instant case], nor does the statute of 1916 [1929 in the instant case] provide any method by which that fact could be ascertained, but the administrative officers saw that they could not enforce the provisions of the statute as to income derived from business done outside of the State; and the statute being silent on the subject, they undertook to devise a scheme of their own by which to determine how much of the total income of the defendant in error was derived from business done in this State. The statute conferred no such authority upon them, and they had no such power. The legislature alone could exercise this power; and having failed to do so, no such apportionment can be made, and the trial court was right in holding that there was no law in this State under which the income tax sought to be assessed could be collected on so much of the income as was derived solely from business done in this State. The legislature seems to have recognized this situation, for at its next session it removed the difficulty" (in Georgia by the passage of the act of 1931). The income tax of the defendant company for 1929, sought to be collected by the State Revenue Commission, was not collectible under the law; and the court did not err in sustaining the affidavit of illegality and in dismissing the levy.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*