# POSTAL TELEGRAPH CABLE COMPANY v. CHARLESTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 1009. Submitted January 22, 1894. — Decided May 14, 1894.

A city ordinance, made under power conferred by a state statute, imposing a license of five hundred dollars upon a telegraph company which had accepted the provisions of the act of July 24, 1866, c. 230, 14 Stat. 221, upon business done exclusively within the city and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents, is an exercise of the police power and is not an interference with interstate commerce.

THE case is stated in the opinion.

*Mr. R. S. Guernsey* and *Mr. T. M. Mordecai* for appellant.

*Mr. Charles Inglesby* for appellees.

MR. JUSTICE SHIRAS delivered the opinion of the court.

On the first day of July, 1892, the Postal Telegraph Cable Company, a corporation of the State of New York, filed in the Circuit Court of the United States for the District of South Carolina a bill of complaint against the city of Charleston, a municipal corporation of the State of South Carolina, and William L. Campbell and Glenn E. Davis, citizens of the State of South Carolina, and respectively sheriff and treasurer of said city, seeking to restrain the collection of a license imposed upon the said Postal Telegraph Cable Company by an ordinance of the city council of Charleston. A preliminary injunction was granted enjoining the defendants from proceeding to collect said license until the hearing of the cause on its merits. Answers were filed by the city and by the city treasurer and city sheriff, and issue was joined by repli-

cations.   The complainant put in evidence tending to sustain the allegations of the bill.

The facts, as disclosed by the bill, answers, and evidence, were substantially these :

The Postal Telegraph Cable Company, a corporation of the State of New York, has an office in the city of Charleston; is engaged in sending and receiving messages by wire to and from points inside and outside of the State of South Carolina; and has its lines over the post roads, highways and railroads in the city of Charleston, and in several of the States.   The company has accepted the provisions of the act of Congress approved July 24, 1866, c. 230, 14 Stat. 221, [now Rev. Stat. § 5263,] whereby it has put its lines at the service of the United States for postal, military, and other purposes, and given precedence to its business.   The company has offices in other cities and towns in South Carolina, several of which have adopted ordinances exacting licenses from the company.   During the year commencing January 1, 1892, and for several years prior to that time, the company has been engaged in the business of receiving and sending telegrams for private persons and for the public between the city of Charleston and other places within the State of South Carolina, and also in sending telegraphic communications between the governmental departments of the United States, and was and is engaged in the telegraph business for the purpose of interstate commerce.   By an act approved December 17, 1881, the general assembly of the State of South Carolina authorized the city council of Charleston to impose a license tax, not exceeding five hundred dollars, on all persons engaged in any business, trade, or profession in the city of Charleston.   By an ordinance, entitled " An ordinance to regulate licenses for the year 1892," the city council enacted that every person, firm, company, or corporation engaged in any trade, business, or profession within the city of Charleston should obtain, on or before the 20th day of January, 1892, a license therefor. The provision relating to telegraph companies is as follows: " Telegraph companies or agencies, each, for business done exclusively within the city of Charleston, and not including

any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents, $500." A penalty, for failure to take out the license, of fifty per cent of the amount of the tax was provided for, and a continuing penalty of fifty per cent for each day's business done without taking out such license. The Postal Telegraph Cable Company, after notification, declined and failed to take out and pay for such license, and, on May 28, 1892, in pursuance of the terms of the ordinance, the license tax of $500, with penalty of fifty per cent, was assessed against the company and put in the hands of the city treasurer for collection, who issued execution therefor, addressed to the city sheriff, requiring him to proceed to collect said license tax and penalty by distress and sale.

At the final hearing, on June 21, 1893, the temporary injunction was dissolved, and the bill dismissed with costs. From this decree the present appeal was taken.

We do not deem it necessary to discuss the contention that the ordinance imposing the license tax in question is invalid by reason of its disregard of provisions of the constitution of South Carolina. The Supreme Court of that State has, in several cases, judicially settled that the power to raise revenue by a license tax on business, given by statute to the city council of Charleston, does not violate any provision of the state constitution. *State* v. *Hayne,* 4 S. C. 403, 413 ; *Information* v. *Jager,* 29 S. C. 438, 443.

It is claimed that the license required by the ordinance is a tax upon the telegraph company for the privilege of exercising its franchise within the city of Charleston, and not an exercise of the police power granted to the city by the State ; that the Postal Telegraph Cable Company, having constructed its lines along post roads in the city of Charleston and elsewhere, no State or municipal authority can exact a license for the privilege of conducting its business, thus restraining the powers possessed by it under its franchises and under the acts of Congress ; and that the ordinance in question is an interference with interstate commerce and therefore void.

The questions thus suggested have been so frequently and so recently considered and decided by this court, in well-known cases, that our duty will be sufficiently performed by briefly citing and applying those cases.

That this license is not a condition upon which the right to do business depends, but is a tax, is shown by the case of *Home Insurance Company* v. *City Council*, 93 U. S. 116, 122. There the city council of the city of Augusta passed an ordinance which imposed a license tax of $250 " on each and every fire, marine, or accidental insurance company located, having an office, or doing business within the city of Augusta." The Home Insurance Company, a corporation of the State of New York, and having an agency in the city of Augusta, refused to recognize the obligation of the ordinance, and filed a bill in the Superior Court of Richmond County in the State of Georgia, to enjoin the city council from collecting the license tax. That court, having refused the injunction prayed for, and having dismissed the bill, the case went to the Supreme Court of Georgia, which affirmed the decree of the Superior Court, and the case was then brought to this court.

It was argued on behalf of the insurance company that, as it had complied with the provisions of the laws of Georgia which authorized foreign insurance companies to do business in that State, it was not competent for a municipal corporation of the State to impose an additional condition on the right of the company to do business. But it was held, citing *The License Tax Cases*, 5 Wall. 462, that the license in question must be regarded as nothing more than a tax; that the penalty provided was a mode of enforcing its payment; and that the license, when issued, was only a receipt for the tax, and not a grant of an authority to conduct business on condition of paying the license.

In *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, 376, where a ferry company, authorized by an act of assembly of the State of Illinois to carry on its business and paying state taxes prescribed in its charter, was called upon by a city ordinance to pay a license tax, it was held by this court that the exaction of a license fee is an ordinary exercise of police

power by municipal corporations; that the power of the State to authorize any city within its limits to enforce a license tax on trades or callings generally, especially those which are *quasi* public, cannot be disputed; and that whether a license fee is exacted under the power to regulate or the power to tax, is a matter of indifference if the power to do either exists.

It was held, in *West. Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530, that a tax imposed by the laws of Massachusetts upon the Western Union Telegraph Company, a corporation of the State of New York, on account of the property owned and used by it within Massachusetts, was valid.

But it is contended that, while a State can prohibit a foreign corporation from doing business within its territory, or can impose conditions upon the exercise of its franchises, such power does not exist when such corporations are engaged in interstate commerce or are agents of the United States government, and reliance is placed on the case of *Leloup* v. *Port of Mobile*, 127 U. S. 640. There it was held that where a telegraph company is doing the business of transmitting messages between different States, and has accepted and is acting under the telegraph law passed by Congress July 24, 1866, no State within which it sees fit to establish an office can impose upon it a license tax, or require it to take out a license for the transaction of such business; that telegraphic communications are commerce, as well as in the nature of postal service, and if carried on between different States, they are interstate commerce, and within the power of regulation conferred upon Congress, free from the control of state regulations, except such as are strictly of a police character; and that any state regulations by way of tax on the occupation or business, or requiring a license to transact such business, are unconstitutional and void. Accordingly, a judgment of the Supreme Court of Alabama, which sustained the validity of an ordinance of a municipal corporation of that State imposing a license tax upon the Western Union Telegraph Company, engaged in the business of transmitting telegrams from and to points within the State of Alabama and between

private individuals of the State of Alabama, as well as between citizens of said State and citizens of other States, was reversed. But it was said, in the course of the discussion in that case, that "it is urged that a portion of the telegraph company's business is internal to the State of Alabama, and therefore taxable by the State. But that fact does not remove the difficulty. This tax affects the whole business without discrimination. There are sufficient modes in which the internal business, if not already taxed in some other way, may be subjected to taxation, without the imposition of a tax which covers the entire operations of the company."

In *Telegraph Company* v. *Texas*, 105 U. S. 460, in error to the Supreme Court of Texas, it was held that, in respect to its foreign and interstate business, a telegraph company is, as an instrument of commerce, subject to the regulating power of Congress, and, if it accepts the provisions of act of the July 24, 1866, (Revised Statutes, §§ 5263, 5268,) it becomes an agent of the United States, so far as the business of the government is concerned; and that the state laws, so far as they impose upon such company a specific tax on each message which it transmits beyond the State, or which an officer of the United States sends over its lines on public business, are unconstitutional; but it was said that "any tax which the State may put on messages by private parties, and not by agents of the United States, from one place to another exclusively within its own jurisdiction, will not be repugnant to the Constitution of the United States."

The case, in *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411, was one where the telegraph company, a corporation of the State of New York, filed a bill in the Circuit Court of the United States for the Southern District of Ohio, against Ratterman, treasurer of Hamilton County, Ohio, seeking to restrain the collection of a tax on the gross receipts of the company, which were principally, but not wholly, derived from business between points within and points without the State of Ohio. The complainant, in its bill, expressed its willingness to pay and offered to pay taxes chargeable against its property and business within the State, but alleged that

the defendant refused to accept such partial payment, and demanded payment for the total assessment on all the gross receipts. The District and Circuit Judges certified a division of opinion to this court, as to whether a single tax upon the receipts of a telegraph company, which receipts were derived partly from interstate commerce and partly from commerce within the State, but which were returned and assessed in gross and without separation or apportionment, was wholly invalid, or invalid only in proportion and to the extent that said receipts were derived from interstate commerce. Mr. Justice Miller delivered the unanimous opinion of this court. The case of *The State Freight Tax*, 15 Wall. 232, was cited as ruling that where the subjects of taxation can be separated so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the State, the court will act upon this distinction, and will restrain the tax on interstate commerce while permitting the State to collect that arising upon commerce wholly within its own territory. Accordingly the decree of the court below, following the opinion of the circuit judge, enjoining the collection of the taxes on that portion of the receipts derived from interstate commerce, and permitting the treasurer to collect the other tax upon property of the company and upon receipts derived from commerce entirely within the limits of the State, was affirmed.

The question arose, and was determined in the same way, in the case of *West. Union Tel. Co.* v. *Alabama*, 132 U. S. 472. It there appeared that a statute of Alabama imposed a tax " on the gross amount of the receipts by any and every telegraph company derived from the business done by it in this State." The Western Union Telegraph Company reported to the board of assessors only its gross receipts received from business wholly transacted within the State. The board required of the company a further return of its gross receipts from messages carried partly within and partly without the State. The company made such further return, and the tax was imposed on the gross receipts as shown by the two returns. This mode of assessment was sustained by the Supreme Court of Alabama,

but this court held that the statute of Alabama, thus construed, was a regulation of commerce, and that the tax imposed upon the messages comprised in the second return was unconstitutional.   In the discussion of the case, Mr. Justice Miller expressed himself as follows: "The principle is, in regard to telegraph companies which have accepted the provisions of the act of Congress of July 24, 1866, (Rev. Stat. § 5263 to § 5268,) that they shall not be taxed by the authorities of a State for any messages, or receipts arising from messages, from points within the State to points without, or from points without the State to points within, but that such taxes may be levied upon all messages carried and delivered exclusively within the State.   The foundation of this principle is that messages of the former class are elements of commerce between the States and not subject to legislative control of the States, while the latter class are elements of internal commerce solely within the limits and jurisdiction of the State, and, therefore, subject to its taxing power."   See, likewise, *Pacific Express Co.* v. *Seibert*, 142 U. S. 339.

The reasoning of these cases needs no reinforcement, and their conclusions are readily applied to the case in hand.

The express terms of the ordinance restrict the tax to "business done exclusively within the city of Charleston, and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents."

It is claimed that the Postal Telegraph Cable Company is not within the terms of this ordinance, because it does not do any business exclusively within the city of Charleston; that its city offices are merely initial points for sending and receiving messages, and that, irrespective of the messages sent or received outside of the State, the interstate messages are not between points within the city; and that, if license exactions were allowed to and made by the various cities in the State, great injury and wrong would be done to the telegraph company.

But this is a hardship, if such exists, that it is not within our province to redress.   If business done wholly within a State is

within the taxing power of the State, the courts of the United States cannot review or correct the action of the State in the exercise of that power.

It is further contended that the ruling of the cited cases does not cover the case of a telegraph company which has constructed its lines along the post roads in the city of Charleston, and elsewhere, and which is exercising its functions under the act of Congress as an agency of the government of the United States. It is obvious that the advantages or privileges that are conferred upon the company by the act of July 24, 1866, (Rev. Stat. §§ 5263–5268,) are in the line of authority to construct and maintain its lines as a means or instrument of interstate commerce, and are not necessarily inconsistent with a right on the part of the State in which business is done and property acquired to tax the same, within the limitations pointed out in the cases heretofore cited.

It was upon the doctrine of these cases that the court below acted in refusing the injunction and dismissing the bill, and its decree is, therefore,

*Affirmed.*

Mr. Justice Harlan, Mr. Justice Brown and Mr. Justice Jackson, dissented.