# City of Anniston v. Southern Railway Co.

*Action of Assumpsit by Municipal Corporation to recover Privilege Tax.*

1. *Assumpsit to recover license; when statutory remedy not exclusive.*— The levy and assessment of taxes creates a legal liability which will support an action of assumpsit, although a remedy for the enforcement thereof is given by statute, unless by the terms of the statute that remedy is made exclusive.

2. *Remedy for collection of taxes; construction of municipal charter.*— The charter of municipal corporation creating a lien subordinate to that of the State and county upon all real and personal property assessed for taxes, and providing proceedings for a judgment against the tax-payer and the sale of his property for the payment of taxes, is merely cumulative of former remedies, and is not exclusive.

3. *Same; same; not applicable to license tax.*—Such a remedy provided by the charter of a municipality does not apply to the enforcement of a lien upon property for the payment of a license or privilege tax imposed by such municipality on certain occupations; and, therefore, the only remedy for the collection of such license tax is by an action of assumpsit.

4. *License tax; city may impose it without infringement of the interstate commerce law of the Federal constitution.*—A State may require a license tax of corporations doing business within its borders, provided the license is confined to business done exclusively within the State; and a

city ordinance requiring railroad corporations engaged in business within this State, and which have a place of business in such city, to pay a license tax, is valid, and its enforcement does not violate any of the rights of such corporations under the interstate commerce clause of the Federal constitution.

5. *Right of municipality to tax occupations not taxed by the State.*—A municipal corporation, when authorized by its charter, may require a license tax upon occupations, which the State does not tax.

6. *City ordinance; separate taxation of two lines of railroads operated by one company.*—Where, under a power granted by its charter, a municipality by ordinance imposes upon all railroad companies doing business within the State and having an office within the said city, a license tax "for each main line of railroad used in connection with such business," a railroad company, which has come into possession of and is operating two different lines of railroad having a place of business in said city, must pay a separate license tax for each line.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

This suit was brought by the appellant, the city of Anniston, against the Southern Railway Company, to recover a license tax alleged to be due plaintiff from the defendant. The complaint was in the following words : "The plaintiff, a municipal corporation, under the laws of the State of Alabama, claims of the defendant, the Southern Railway Company, a corporation, the sum of two hundred dollars, for the privilege or license for engaging in the business, in the city of Anniston, of operating its main line of railroads, viz., a railroad formerly known as the East Tennessee, Virginia & Georgia Railroad, and a railroad formerly known as the Georgia Pacific Railroad, both being main lines now and before the commencement of this suit, being operated as and by the Southern Railway Company, for the transportation of freights and passengers, one or both, to and from the city of Anniston, to and from other points within the State of Alabama, and keeping an office or place of business in the city of Anniston. .

"Plaintiff avers that on the 10th day of May, 1895, the city council of Anniston adopted an ordinance, No. 40, and the same was approved on said date, by F. M. Hight, the mayor, and attested by Geo. T. Anderson, the clerk of said city, said ordinance being in the following words : [Here is set out the ordinance passed by the city council of Anniston, the first section of which is set out in the opinion]. And the plaintiff avers that

the said defendant, since the passage of said ordinance by the city council of Anniston, and before the institution of this suit, viz., on the 20th day of May, 1895, and up to this date, the said defendant did, in the city of Anniston, engage in the business of operating railroads, to-wit, the main line of a railroad formerly known as the East Tennessee, Virginia & Georgia Railroad, and the main line of a railroad formerly known as the Georgia Pacific Railroad, now and before the commencement of this suit, being operated as and by the Southern Railway Company, for the transportation of freights and passengers, one or both, to and from the city of Anniston, to and from other points within the State of Alabama, and that said Southern Railway Company, during said time, kept an office or place of business in the city of Anniston, and that during said period the Southern Railway Company used and operated two main lines as aforesaid, running into or through the city of Anniston, and that said defendant, the Southern Railway Company, before carrying on or engaging in said business as aforesaid, neither took out nor paid for a license therefor, as required by said ordinance as aforesaid. Wherefore plaintiff claims two hundred dollars of said defendant, to-wit: the sum of one hundred dollars for the license of the main line formerly known as the East Tennessee, Virginia & Georgia Railroad, and one hundred dollars for the license of the main line formerly known as the Georgia Pacific Railroad, aggregating two hundred dollars, said railroads being operated by the defendant as aforesaid in the city of Anniston." The second section of the ordinance which is set out at length in the complaint, provided, that any person or corporation who operated a railroad in the city of Anniston, without taking out a license, as required by section 1, shall, on conviction, be fined not less than fifty, nor more than one hundred dollars, and may also be sentenced to hard labor upon the streets of Anniston, or imprisoned in the city prison, for not less than one, nor exceeding three months, one or both, at the discretion of the court trying the cause. To this complaint the defendant demurred upon the following grounds:

"1. For that the amount sought to be recovered is shown by the complaint to be for a privilege or license tax, and is not a civil contract that can be enforced in a suit of this nature.

"2. For that the ordinance set out in the complaint designates and provides the method of enforcing the collection of such a privilege or license tax, and the plaintiff is bound by the ordinance specifying the details necessary to be pursued for the collection thereof, and can not proceed as in a civil action of this nature.

"3. For that said complaint fails to state the person who, either in his own right, or as the agents of any person, firm or corporation, engaged in the business of operating a railroad in the city of Anniston without a license, as required by section 1 of said ordinance, has been arrested, tried or convicted, or fined therefor, or that any person or agents of the defendant has been so engaged in operating a railroad in said city without a license, and has been duly tried, convicted, fined or imprisoned as provided by section 2 of said ordinance number forty, adopted by the plaintiff on the 10th day of May, 1895.

"4. For that the plaintiff seeks to recover a double license from the defendant, in that the defendant, the Southern Railway Company, is an entity, and is not liable for the payment of two license taxes, as claimed by the plaintiff in the complaint.

"5. For that said complaint seeks or endeavors to collect from the defendant, a corporation under the laws of the State of Virginia, a double license tax, and is not authorized in law or by its charter to collect such tax.

"6th. For that plaintiff by its complaint seeks to tax interstate commerce ; and for that said ordinance set out in said complaint is repugnant to the power conferred on Congress to regulate commerce among the several States, and is unconstitutional and void."

The 7th ground is the same as the 6th.

"8th. For that the ordinance set out in the complaint is inconsistent with the general laws of the State, in that the State imposes no license or privilege tax upon railroads, and the legislature is prohibited by the constitution of the State from passing any special acts inconsistent with the general laws of the State."

The 9th is the same as the 8th ground.

"10th. For that said ordinance set out in said complaint is violative of the provisions of the constitution of the State of Alabama, even if authorized by its charter, as such constitution provides that the General Assembly

shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this State, and the general laws of the State of Alabama prohibit the plaintiff, the city of Anniston, from assessing, levying or collecting any license tax on the business, occupation or privilege of operating any railroad.''

The court sustained the demurrer interposed to the complaint, and, the plaintiff declining to amend his complaint, judgment was rendered for the defendant. The plaintiff appeals from this judgment, and assigns as error the rulings of the court in sustaining the demurrer to the complaint, and in rendering judgment in favor of the defendant.

A. F. McGhee, for appellant.—The city has power under its charter to impose the license tax sought to be recovered in this action.—Acts of 1894-95, p. 1033, § 7, sub-div. 8. The fact that there is no license tax imposed by the State of the same nature as this, does not make the ordinance void.—*Ex parte City Council in re Knox*, 64 Ala. 463 ; *Holt v. Mayor, &c.*, 111 Ala. 369. In *Van Hook v. Selma*, 70 Ala. 361, it is said : ''The power of the State to authorize the license of all classes of trades and employments can not be doubted, and there is just as little doubt of its power to delegate this right to municipal corporations, either for the purpose of revenue, or for that of taxation.''

The ordinance is not in conflict with the interstate commerce clause of the constitution of the United States. The requirement of payment of license is only a mode of imposing taxes on the licensed business.—*License Tax Cases*, 5 Wall. 462.

Taxes when legally levied are debts, and the law implies a promise to pay them, on which implied promise assumpsit will lie.—*Perry County v. R. R. Co.*, 58 Ala. 563 ; *Savings Bank v. U. S.*, 19 Wall. 227 ; *Meredith v. U. S.*, 13 Peters 86 ; 2 Dillon on Mun. Corp., §§ 816, *et seq.* ; *Osborne v. Mobile*, 83 U. S. 479 ; *Moore v. Eufaula*, 97 Ala. 670.

John B. Knox, *contra.*—1. Without regard to other questions raised by the demurrer it would seem to be sufficient to sustain the ruling of the court below that

a civil action cannot be maintained by a municipal corporation against the citizen to recover a mere license tax, especially, as in this case, where the ordinance which exacts the license also prescribes a specific remedy other than the one now pursued for its collection or enforcement.—*People v. Craycroft*, 2 Cal. 243, 56 Am. Dec., 331; *Aldrich v. Cheshire R. R. Co.*, 21 N. H. 359; 53 Am. Dec. 212; *Powell v. State*, 69 Ala. 10; *Bettis v. Taylor*, 8 Porter (Ala.) 564.

2. The authorities which hold that a *sovereign* State may proceed to collect taxes lawfully imposed by an action of debt do not extend to embrace municipal corporations which are mere creatures of the State. Even if we waive the question of the power of the city to impose the tax, it seems clear that when the ordinance which is supposed to authorize its collection prescribes a specific remedy for its enforcement this is exclusive of all others and a civil action cannot be maintained to collect it.—*Perry County v. Railroad Company*, 58 Ala. 546, 563; *Savings Bank v. United States*, 19 Wall. 227, 237; *People v. Craycroft*, 2 Cal. 243, 56 Am. Dec. 331; *Aldrich v. Cheshire R. R. Co.*, 21 N. H. 359, 53 Am. Dec. 212; *Powell v. State*, 69 Ala. 10; *Bettis v. Taylor*, 8 Porter, (Ala.) 564.

3. But if the city be authorized to require a privilege tax of railroads the ordinance ought not to be construed so as to impose a double tax upon any one road. The effort in this case is not merely to collect one tax, but a double tax; and this is based upon an improper construction of this language of the ordinance: "shall pay an annual license tax for each main line of railroad used in connection with such business." The reference in the ordinance to the main line seems to be for the purpose of distinguishing it from side or spur tracks or the innumerable other tracks which a railroad company may have in use in its business. The purpose is to tax the main line of every company but not to double tax it.

4. It sufficiently appears from the record that the defendant company is an entirety, and it is taxable as such, if it is taxable at all under this ordinance, without regard to the number of tracks it may own or operate. And so it has been held that one who pays a privilege tax for running a livery stable is not liable for the tax

levied upon the privilege or running hacks buggies, etc., *Bell v. Watson*, 3 Lea (Tenn.) 328 ; *Williams v. Garignes*, 30 La. Ann. 1094 ; and that a book seller cannot be compelled to pay an additional privilege tax imposed on keepers of second hand goods because he deals in old books.—*Eastman v. Chicago*, 79 Ill. 178. And that a retail dealer whose ordinary license is five dollars but who combines the sale of liquor in less quantities than one pint, for which a license of fifty dollars is required, can only be required to pay a total license of fifty dollars. *Police Jury v. Marrero*, 38 La. Ann. 896 ; 25 Am. & Eng. Encyc. of Law, 491.

5. It seems now sufficiently settled that a sovereign State may require a privilege tax on corporations doing business within its borders provided the tax is confined to business done entirely within the State.—*Moore v. City of Eufaula*, 97 Ala. 670 ; *Emert v. Missouri*, 156 U. S. 296 ; *Pacific Express Co. v. Seibert*, 145 U. S. 336 ; *Postal Telegraph Co. v. Charleston*, 153 U. S. 692. But the contrary is true where the tax is not expressly limited to the the business done within the State.—*Norfolk & Western R. R. Co. v. Pennsylvania*, 136 U. S. 114 ; *Leloup v. Port of Mobile*, 127 U. S. 640.

HARALSON, J.—1. The tax to collect which this suit was instituted, was levied under Par. 8 of section 7 of the charter of the city of Anniston, (Acts, 1894-95, p. 1047), which provides that the city shall, within its limits, have power by ordinance, "To license, tax and regulate auctioneers, hotels, &c., [specifying many trades and occupations], and all other privileges, trades and occupations of all kinds and classes whether of like kind to those mentioned or not."

The ordinance of the city under which the tax was levied provides : "That every person, firm or corporation engaged in the city of Anniston in the business of operating a railroad or railroads, for the transportation of freights and passengers, one or both, to and from the city of Anniston, to and from other points within the State of Alabama, and keeping an office or place of business in the city of Anniston, shall pay an annual license tax of one hundred dollars *for each main line of railroad* used in connection with such business, running into or through the city of Anniston, and before engaging in or

carrying on such business, running into or through the city of Anniston, and before engaging in or carrying on such business, shall take out and pay for a license for the carrying on of such business, and no license under this ordinance shall be issued for less than one hundred dollars," &c.

Section 14 of the charter creates a lien subordinate to that of the State and county, on all real and personal property for payment of taxes which may be assessed against the owner on his property. Section 17 of the charter provides a mode for the collection of delinquent taxes, by specified proceedings for obtaining a judgment against the tax-payers and for the sale of the property on which the taxes were levied.

2. It is not disputed that a license-tax, so called, falls within the general term, taxes, and that the party against whom it is levied is bound for it, and in the absence of any statute on the subject, is liable to like remedies for its collection, as for any other species of taxes. It is insisted, however, for the appellee, that the statute provides a remedy for the collection of this tax, which is exclusive of an action of assumpsit at law for the enforcement of its collection. But this position is untenable for at least two very good reasons.

(1.) Mr. Cooley, in discussing the question whether taxes are debts for which an action at law will lie, states that there is a division in the decisions of courts on the subject and, admitting that some courts have held that the imposition and assessment of a tax create a legal obligation to pay, upon which the law will raise an assumpsit, notwithstanding the statute has given a special remedy, he further states, that in general the conclusion has been reached, that when the statute undertakes to provide remedies, and those given do not embrace an action at law, a common law action for the recovery of the debt will not lie. He collates the authorities *pro* and *con.*—Cooley on Taxation, (2d ed.), pp. 15, 16.

Desty, in referring to these statutory remedies for the enforcement of taxes, states, that a statute creating a new remedy, without expressly repealing the old remedy, is merely cumulative, and does not deprive the court of its jurisdiction to enforce the old remedy; that the government is entitled to all the remedies for the collection of taxes, including an ordinary suit at law, if it

[City of Anniston v. Southern Railway Co.]

chooses to resort to that remedy; that assumpsit is the proper form of action for the recovery of a delinquent tax, and that the preponderance of authority is that either debt or assumpsit may be sustained for the recovery of taxes, as debt lies for a sum of money certain, due by statute.—Desty on Taxation, § 126, p. 706.

In reviewing the authorities on the subject, in *Perry County v. The Railroad*, 58 Ala. 564, this court, by STONE, J., said: "We think it may be affirmed as the result of the foregoing, and a large preponderance of authorities, that taxes levied and assessed become a legal liability on the tax-payer, that may be enforced by an action at common law, unless the statute gives a remedy that is, in its nature, exclusive."—Burroughs on Taxation, § 105, p. 253.

Again, the court in *Winter v. The City Council of Montgomery*, 79 Ala. 481, held to the doctrine, as being the sounder and better one, that taxes levied and assessed create a legal liability, which will support an action at law, although a statutory remedy is given to enforce their payment.—*The State v. Fleming, ante* p. 179.

The case of *The State v. McAllister*, 60 Ala. 105, is not in conflict with these two. In that case, the special proceeding authorized, was limited to justices of the peace.

We hold, therefore, that the remedy given for the enforcement of taxes, by the charter of Anniston is merely cumulative of former remedies, and is not exclusive. There are no words of exclusion of other remedies, and nothing from which we may infer that the legislature designed the remedy to be such.

(2.) But, independently of this, the remedy there created is against the real and personal property that had been assessed, where the taxes were delinquent. It is for the enforcement of the city's lien on such property, for the payment of taxes assessed on it, and is really a proceeding *in rem*.

In this case, the tax is not on property, but on a different subject and species of taxation,—a license or privilege tax, for doing business in the city. There is a marked distinction in our constitution kept up in our revenue system and recognized in the adjudged cases, between these two subjects of taxation,—property as such, and a license or privilege tax.—*W. U. Tel. Co. v.*

*State Board of Assessment,* 80 Ala. 273 ; Cooley on Taxation, 570, 571. The statutory remedy in question has no reference to the enforcement of liens on property for the payment of a license or privilege tax. The remedy at law is the only one for the collection of such a tax.

3. The appellant properly yields the contention, raised by his demurrer below, that the imposition of this tax was an interference with inter-state commerce. It is well settled that a sovereign State may require a privilege tax on corporations doing business within its borders, provided the tax is confined to business done entirely within the State.—*Moore v. The City of Eufaula,* 97 Ala. 670 ; *Emert v. Missouri,* 156 U. S. 296 ; *Postal Tel. Co. v. Charleston,* 153 U. S. 692 ; *Express Co. v. Seibert,* 142 U. S. 339. There is no pretense that the tax was imposed for doing business elsewhere than in the city of Anniston.

4. As to the other points raised by demurrer, that the city of Anniston is not authorized to exact a license tax upon defendant's business, when no similar tax is exacted by the State, it is sufficient to say, as counsel for defendant admit, that this point has been ruled adversely by this court to the appellee since the decision of this case in the court below.—*Holt v. Mayor & Aldermen of Birmingham,* 111 Ala. 369.

5. The defendant company, which had an office or place of business in Anniston, had two main lines of railroad operated through and doing business in said city,—one, formerly the East Tenn. Va. & Ga. Railroad, and the other the Georgia Pacific Railroad,—both being main lines, now and before the commencement of the suit. It was just and entirely within the grant of power from the legislature, for the city to impose upon each of these main lines, though operated by one company, a separate privilege tax. It was a way of equalizing the burdens of taxation between this company, and any other which might not be so fortunate as to be able to operate more than one line.

The power to tax occupations and privileges, as is held, involves the right to select the mode in which the taxes shall be levied, and to determine the amount of the tax. This may be done having reference to the income from the business taxed, the value of the property used in its prosecution, the amount of business

[Gay, Hardie & Co. v. Strickland.]

done, or it may be done arbitrarily by the taxing power, if done within constitutional limitation, and the burden is made to rest equally upon all of a class.—25 Am. & Eng. Encyc. of Law, 489, and authorities cited. We are unable to discover why the methods adopted by the city, having reference to the protection afforded, the value of the properties, the amount of the business done, and the equalization of the burdens of taxation, is not a proper one and the tax was not legally imposed.

The city court erred in its rulings, and its judgment is reversed and the cause remanded.

Reversed and remanded.