## STATE REVENUE COMMISSION *v.* EDGAR BROTHERS CO.

No. 11864. NOVEMBER 11, 1937. REHEARING DENIED DECEMBER 9, 1937.

*M. J. Yeomans, attorney-general, Marshall L. Allison,* and *O. H. Dukes,* for plaintiff.

*Park & Strozier* and *Orville A. Park, Jr.,* for defendant.

HUTCHESON, Justice. This case came to this court on the grant of a writ of certiorari to the decision of the Court of Appeals. 55 *Ga. App.* 505 (190 S. E. 623). The facts and issues as stated by the Court of Appeals are as follows: "On August 28, 1935, the State Revenue Commission issued an execution against Edgar Brothers Company for income taxes alleged to be due to the State for the year ending December 31, 1929. The defendant in fi. fa. filed an affidavit of illegality, averring, in part, that the claim and

reassessment was barred by the statute of limitations; and that it was not subject to income tax, under the act of 1929, on business done in Georgia. The State Revenue Commission filed a traverse of the affidavit of illegality. The case was submitted to the judge without the intervention of a jury. The court held: (1) That 'the assessment and execution issued thereon by the plaintiff against the defendant is barred by the statute of limitations;' and (2) that under the 'act of the legislature of 1929, the plaintiff is not authorized to assess the income tax against the defendant, for the reason that the facts in this case show that the income derived from the operation of the defendant's plant, as described in the pleadings, depended on the sale of the manufactured products after they arrived in other States;' and that the act of 1929 did not contain sufficient provisions for reaching incomes derived from such source. On this judgment the plaintiff in fi. fa. assigns error. . . The substance of the defendant's affidavit of illegality, so far as it relates to this second issue, is that it is a corporation of New Jersey, that its principal or home office and place of business is in New Jersey; that its books and records are kept there and its business transacted there; that it owns certain lands and mineral rights in Georgia, and mines clay thereon, all of the clay being shipped out of the State of Georgia on orders taken by the company at its principal or home office in Metuchen, New Jersey, and at its sales office in the City of New York; that its mining operations are in charge of a superintendent, but it has no officer and no business office in Georgia; that it pays its employees, and for supplies, materials, and fuel, and all other expenses, from moneys sent from the principal or home office of the company at Metuchen, N. J., no money being received or handled by any office or officer in Georgia from the sale of any of the clay mined in Georgia; that orders are taken and clay is sold by the company through its officers at a sales office in the City of New York and the home office in Metuchen, N. J., and clay to fill the orders so taken is shipped from the mines in Georgia as directed by the Metuchen office; that bills for the clay sold are sent out from, and are due and payable at, the Metuchen office, and are collected there, and not in or through any office or officer in Georgia; that the clay is shipped to other States, but none of it is shipped to any point in Georgia or sold to any customer domiciled or doing business in

Georgia; . . that the defendant company operates a commissary in connection with its mines, and that it has returned and paid the State of Georgia the income tax on the profit made in the operation of the commissary for the year 1929. . . It is undisputed that the property tax has been paid on the real estate, mines, machinery, and equipment in Georgia, and that the income tax on the income from the commissary has been paid. The issue in this case is as to the tax on the income received from selling the product of the mines in other States." It may be stated here that the allegations contained in the affidavit of illegality and the evidence show that the defendant in fi. fa. has a local office in the State of Georgia, where records are kept showing the quantity of clay mined and shipped, records of pay-roll accounts with its employees; and from which purchases of materials, supplies, and fuel are made, for use in its operations in Georgia. All money, however, is paid from its home office.

The Court of Appeals sustained the judgment of the trial judge, holding: (1) "Since the 1929 act (with the exception of the assessment and collection of taxes accrued thereunder before the effective date of the 1931 act) was expressly repealed by the act of 1931, thus leaving the 1931 act as the only State income-tax law in force, and the repealing of the 1929 act and passage of the 1931 act showing that the former act was defective, incomplete, or for some reason unsatisfactory to the legislature; and since the 1929 act failed to provide for any period of limitation, and the 1931 act corrected this defect and provided a period of limitation, and also provided for the assessment and collection of a ' deficiency ' in the tax imposed by ' any prior act,' and defined the word ' deficiency ' as meaning the amount by which the tax imposed by this act [1931] ' or any prior act ' exceeds the amount shown as the tax by the taxpayer upon his return; and this provision of the act of 1931 being remedial, and the execution of the plaintiff in fi. fa., issued August 28, 1935, being issued after the three-year period of limitation prescribed in the act of 1931, the execution is barred by the statute of limitations." (2) "The phrase ' confined to its business done in this State,' as used in the act of 1929, means intrastate business, and not interstate business," for which reason the act of 1929 was too indefinite in not having incorporated sufficient provisions for reaching income derived from the sale in other

States of products manufactured in this State, but only taxed a non-resident corporation doing business in this State on its income arising only from business done in this State. On these rulings of the Court of Appeals the State Revenue Commission assigns error.

■ The income-tax act of 1929 provided no period of limitation on the assessment or issuance of an execution for taxes imposed by the act. Section 1 of the act, in providing that "there shall be levied and collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth; the same to be returned, calculated, ascertained, and paid according to the system and rules hereinafter set forth," did not adopt the limitations provision of the Federal income-tax act then in force. There is a distinct difference in levying and collecting a similar tax and in levying and collecting a tax in a similar manner. Does the act of 1931 place any limitation on the collection of taxes imposed under the act of 1929? The act of 1931 expressly repealed the act of 1929 (sec. 62, p. 59), but provided that the act of 1929 "shall remain in force for the assessment and collection of all taxes which have accrued or may accrue under the income-tax act of 1929, and for the collection of all penalties which have accrued or may accrue in relation to said act" (sec. 63, p. 59). This provision neither added to nor took away from nor made any change in the status of taxes accrued or accruing under the act of 1929 in so far as it related to limitations on the collection thereof. Section 35(a) of the act of 1931 declares: "As soon as practicable after the return is filed, the commissioner shall examine it and shall determine the correct amount of tax. If the commissioner determines that there is a deficiency in respect of the tax *imposed by this act or any prior act,* the commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. . . No assessment of a deficiency in respect to the tax *imposed by this act or any prior act,* and no proceeding in court for its collection, shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer," etc. Subsection (f) of section 35 declares: "As used in this act, the word 'deficiency' means—the amount by which the tax *imposed by this act or any prior act* exceeds the amount shown as the tax by the taxpayer upon his return, or if·no

amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, the amount determined by the commissioner to be the correct amount of the tax." Section 39 of the act of 1931 declares: "If any tax *imposed by this act or any prior act* is not paid within ten days after notice and demand from the commissioner, the commissioner shall issue a fi. fa.," etc. A reading of the above sections and the repealing sections of the act of 1931, the act of 1929 being the only prior act, discloses that the assessment and collection of all taxes which have accrued or which may accrue under the act of 1929 were to be collected through the machinery of the act of 1931.

Section 36 of the act of 1931 reads: "(a) Except as provided in subsection (b) of this section, the amount of income taxes *imposed by this act* shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of *such* taxes shall be begun after the expiration of such period." Subsection (b) states: "In case of a false or fraudulent return with intent to evade tax or of a failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." While the act of 1931 plainly provides that the machinery of that act shall be used for the *assessment* and *collection* of deficiencies in the tax imposed by that act and the act of 1929, it likewise in plain and unmistakable terms places a limitation period only on the assessment and collection of taxes *imposed by that act,* and none other. The mere fact that the tax imposed by the act of 1929 is to be assessed and collected under the provisions of the act of 1931 does not make such a tax one *imposed* by the latter act, and it is only to such tax that the limitation period relates. That, as thus construed, the act of 1931 places a period of limitation on the enforcement of a younger claim (under the act of 1931), and does not place any limitation on an older claim (under the act of 1929), is a matter within the exclusive province of the legislature, and the reasonableness or unreasonableness of such action rests with that body, and not with the court. While the reasonableness or unreasonableness of a statute, if construed to have a particular meaning, will be considered by the courts in arriving at a proper construction thereof, and if the language of the statute permits it will be construed as having the more reasonable

intent and effect, yet where the language of the statute is clear and unmistakable in its terms, and distinctly declares the intention of the legislature, the statute "is not open to construction. It needs none and can receive none. It stands self-interpreted, and courts have nothing to do but to enforce it. The exclusion of interpretation, where none is needed, may be stated to be, notwithstanding the absurdity which it involves, the first rule of construction." *Neal* v. *Moultrie*, 12 *Ga.* 104, 110; *Standard Oil Co.* v. *State Revenue Commission*, 179 *Ga.* 371 (176 S. E. 1).

■ Before entering into a discussion of the second question presented by the assignments of error on the decision rendered by the Court of Appeals, we think it advisable that we call attention to a few of the general rules relating to the authority of a State to levy an income tax as against the objection that such tax contravenes the commerce clause of the Federal constitution (Code, § 1-125). A State has the power to tax the income of its resident and domestic corporations, derived from transactions both within and without the State, where there is no discrimination against interstate commerce either in the admeasurement of the tax or in the means adopted for enforcing it. United States Glue Co. *v.* Oak Creek, 247 U. S. 321 (38 Sup. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748). As to non-residents an income tax may be levied upon income received from property within the State; and the fact that it may require activities of skill and management outside of the State to bring the income to fruition does not by reason of the commerce clause of the Federal constitution deprive the taxing State of jurisdiction to tax income which arises in its borders (Shaffer *v.* Carter, 252 U. S. 37 (40 Sup. Ct. 221, 64 L. ed. 445) ; Travis *v.* Yale &c. Mfg. Co., 252 U. S. 60 (40 Sup. Ct. 228, 64 L. ed. 460)), or as to non-residents doing business in a State and whose business is of a unitary character, as that of the taxpayer in the instant case, a tax may be levied based upon the entire net income, but apportioned to that part of the net income attributable to business done in the taxing State, where the enforcement of such tax is left to the ordinary means of collecting taxes. Underwood Typewriter Co. *v.* Chamberlain, 254 U. S. 113 (41 Sup. Ct. 45, 65 L. ed. 165). For further authorities relating to State income taxes upon non-residents, see annotations in 15 A. L. R. 1319; 90 A. L. R. 484; 75 L. ed. (U. S.) 879. The taxpayer in this case is

operating a unitary business. Bass *v.* State Revenue Com., 266 U. S. 271 (45 Sup. Ct. 82, 69 L. ed. 282), affirming 232 N. Y. 42 (133 N. E. 122).

The revenue commission contends that the income-tax act of 1929 imposes a tax of the latter character. The taxpayer contends that the act purports only to impose a tax of the former character. The question therefore is, not whether the State has authority to impose a tax as is contended for by the commission, but rather whether it did impose such a tax. Section 1 of the income-tax act of 1929 declares: "On the net income of every person, firm, or corporation residing or doing business in this State, except insurance companies which pay to the State a tax upon premium income, after making such deductions as are allowed by the laws of the United States in the system by them adopted for determining net incomes and such increases and deductions as are hereinafter provided for in determining a proper taxable income, there shall be levied and collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth; the same to be returned, calculated, ascertained, and paid according to the system and rules hereinafter set forth." Section 2. "Whenever any such person, firm, or corporation residing or doing business in this State makes an income-tax return to the United States, or is legally bound so to do, such person being hereinafter briefly referred to, for convenience, as a taxpayer, it shall be his duty to make at the same time a like return to the State of Georgia and file the same with the State tax-commissioner for the purpose of a State tax on income. Such duplicate return shall furnish the same information as is contained in his return to the United States, shall be made on a blank form to be furnished by the tax-commissioner, and shall ascertain the taxable net income in the same way as in the return to the United States; but before ascertaining the net income taxable by the State, the following changes shall be made: (1) To the amount ascertained under the laws of the United States as the net income taxable by the United States, there shall be added in said return the gross amount of any salary received by the taxpayer during the tax year, or accrued to him during said period as a public official or employee of the State, or of any county, municipal corporation, or other political division thereof, and the net amount

of any fees, perquisites, or other emolument from said sources or any of them, paid to him during the same period for official compensation," with certain exceptions. (2) From the amount so ascertained as the taxable net income shall be deducted any salary paid to the taxpayer by the United States or accrued to him from the same source as an official salary for any service rendered by him to the United States, and any and all interest paid to him on any bond or bonds or other obligation of the United States. If neither of the changes indicated by subparagraphs 1 and 2 above is made, the net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon to the State of Georgia shall be one third of that payable to the United States. But in case the net taxable income be changed as the result of complying with subparagraphs 1 or 2 above, the tax payable to the State shall be increased or reduced so as to be one third of what would have been payable to the United States under their laws upon such increased or reduced taxable net income." Section 3. "Any person, firm, or corporation who makes no income-tax return to the United States because of having no sufficient income taxable by the United States to call for such return under the laws of the United States, but who would have such sufficient income if his salary, fees, or perquisites from the State or subdivision thereof were taxable by the United States, shall be liable and is hereby required to make to the State of Georgia an original return on the same or similar form as would be used in making a duplicate return as required in section 2 of this act, indicating in some appropriate way whether the same is an original return. In such case the tax liability to the State shall be one third of what it would be to the United States if said income were by them taxable. In any case where a non-resident corporation having an office and doing business in this State makes its income-tax return in some other State, such corporation shall make an original return to the tax-commissioner of Georgia, confined to its business done in this State, upon like principles as are in this section above provided." Section 4. "It shall be the right of any taxpayer making return of income for taxation by the State, to attach or add to such return any claim such taxpayer may choose to make as to any item or items included in his return to the United States which he conceives to be exempt from taxation

by the State of Georgia. In such case it shall be the duty of the taxpayer so making return to make a clear and distinct statement of all relevant facts connected with such claim, and to make a clear statement of the reasons why he conceives such item to be not taxable by the State. And there shall be deducted any amount that may be derived from incomes of any such persons or companies as the State of Georgia is prohibited from taxing under the constitution of the United States."

It must be admitted at the outset that the income-tax act of 1929 does not in literal terms impose a tax on non-residents doing business in this State on the basis of the entire net income derived from all sources, but apportioned to that part of such income as is attributable to business done in this State. But does the act, by a proper construction of its applicable provisions, express the intention of the legislature to levy such a tax with sufficient definiteness and clarity to overcome the inhibitions of the rule that no property is subject to taxation unless the legislative intent to tax is manifest? The Court of Appeals, in holding that the legislature by the act, did not manifest an intention to impose a tax based upon the entire net income of a non-resident corporation doing business in this State, but apportioned to such part of the net income as is attributable to business done in this State, construed section 3 of the act, wherein non-resident corporations doing business in this State were required to make an original return to the tax-commissioner confined to its "business done in this State," to mean that a *tax was imposed* only on income derived from business done in this State by such corporation, that is intrastate income, and cited as sustaining authority the following cases: Pacific Express Co. *v.* Seibert, 142 U. S. 339, 350 (12 Sup. Ct. 250, 35 L. ed. 1035); City of Ogden *v.* Crossman, 17 Utah, 66 (53 Pac. 985); State *v.* Rocky Mountain Bell Tel. Co., 27 Mont. 394 (71 Pac. 311); State *v.* Wagener, 77 Minn. 483 (80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. R. 681); Moore *v.* Eufaula, 97 Ala. 670 (11 So. 921); City of Anniston *v.* Southern Ry. Co., 112 Ala. 557 (20 So. 915); Osborne *v.* Florida, 164 U. S. 650, 654 (17 Sup. Ct. 214, 41 L. ed. 586); Postal Telegraph-Cable Co. *v.* Charleston, 153 U. S. 692 (14 Sup. Ct. 1094, 38 L. ed. 871); Ratterman *v.* Western Union Tel. Co., 127 U. S. 411 (8 Sup. Ct. 1127, 32 L. ed. 229); Converse *v.* Northern Pac. Ry. Co., 2 Fed. (2d) 959. In

the Seibert case a taxing statute of the State of Missouri was attacked as violative of the commerce clause of the Federal constitution, in that it imposed a tax on interstate commerce. The following appears in the opinion of the court: "The allegation of the bill is very positive that in the prosecution of its business as an express company the complainant is engaged, in part, in the transportation of goods and other property between the States, . . and also in the business of carrying goods between different points within the limits of the State of Missouri. The question on this point, therefore, is narrowed down to the single inquiry, whether the tax complained of in any way bears upon or touches the interstate traffic of the company, or whether, on the other hand, it is confined to its *intrastate* business. We think a proper construction of the statute confines the tax which it creates to the *intrastate* business, and in no way relates to the interstate business of the company. The act in question, after defining in its first section what shall constitute an express company or what shall be deemed to be such in the sense of the act, requires such express company to file with the State auditor an annual report ' showing the entire receipts for business done *within the State* of each agent of such company doing business *in this State,*' etc., and further provides that the amount which any express company pays ' to the railroads or steamboats *within this State* for the transportation of their freight *within this State,*' may be deducted from the gross receipts of the company on such business; and the act also requires the company making a statement of its receipts to include, as such, all sums earned or charged ' for the business done *within this State,*' etc. It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other States and the State of Missouri, expressly limit the tax to receipts for the sums earned and charged for the *business done within the State.* This positive and oft-repeated limitation to business done within the State evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. ' Business done within this State ' can not be made to mean business done between that State and other States. We therefore concur in the view of the court below that it was not the legislative intention, in the enactment of this statute,

to impinge upon interstate commerce, or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce."

In Ratterman v. Western Union Tel. Co., supra, in answer to a certified question of the circuit court, it was simply held that a single tax, assessed under the laws of a State upon receipts of a telegraph company which were partly derived from interstate commerce and partly from commerce within the State, and which were *capable of subdivision,* but were returned and assessed in gross and without separation or apportionment, was invalid in proportion to the extent that such receipts were derived from interstate commerce, but was otherwise valid. In City of Ogden v. Crossman, supra, a license tax was placed upon the operation and maintenance in the city of telephones for which a rental charge was made. It was contended that the ordinance violated the commerce clause of the Federal constitution, for the reason that the telephones, upon payment of an additional charge, could be used for interstate communications. It was said by the court: "By engaging in a business of operating and maintaining such telephones in Ogden City, and making and receiving a rental charge for the use of the instruments therein, and for no other place, it became amenable to the ordinance. A business done wholly within a city is within the taxing power of the city. The defendant corporation is not exempt from the operation of the ordinance, and the payment of a license upon its instruments or business which arises and is conducted wholly within Ogden City, even though at the same time the defendant corporation may do a business or use its instruments in Ogden City for business which is in part interstate in its character. We are of the opinion that the ordinance does not affect or apply to this latter class of business, which is interstate in its character." Citing Osborne v. Florida, 164 U. S. 650 (supra), Postal Tel.-Cable Co. v. Charleston, 153 U. S. 692 (supra), City of Anniston v. Southern Ry. Co., 112 Ala. 557 (supra), and American Harrow Co. v. Shaffer, 68 Fed. 750. In State v. Rocky Mountain Bell Tel. Co., supra, it was held that a statute providing that every corporation "doing business in this State" as a telephone company must pay a license, in each county where such business is transacted, of 75 cents per year on each instrument in use, was not invalid as regards a telephone company doing business

within the State and also engaged in interstate traffic, the statute being intended only to apply to instruments used solely in business within the State. In the opinion it was said: "It is to be presumed that in enacting [the statute] and in using therein the terms 'doing business in this State,' the legislature did so in view of the constitutional provision conferring upon Congress the sole power to regulate interstate commerce; and it will not be implied that it intended to go beyond its lawful powers, in the absence of express statutory terms directly contravening those provisions," and followed a similar ruling, construing a similar provision of a statute of the State of Florida, in Osborne v. Florida, 33 Fla. 162 (14 So. 588, 25 L. R. A. 120, 39 Am. St. R. 99), aff. 164 U. S. 650 (supra). State v. Wagener, supra, involved the construction of a police regulation, and not a revenue statute. In the opinion it was said "that the statute does not in terms apply to interstate business, and it will not be implied that the legislature intended to go beyond its lawful powers in enacting it. If, therefore, it be held that the legislature could not forbid one to engage in the business of commission merchant, as to interstate shipments, without compliance with the provisions of the State statute, such statute should be construed to apply only to a local or domestic business, and such construction will be followed by the Federal courts," as was done in Osborne v. Florida, supra. In Moore v. Eufaula, and City of Anniston v. So. Ry. Co., supra, the tax was expressly limited to local activities. The same may be said of the ordinance involved in Postal Tel.-Cable Co. v. Charleston, supra. These last three cases involved the construction of license taxes.

In United States Glue Co. v. Oak Creek, 247 U. S. 321 (supra), it was stated: "It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. Thus it was declared in Postal Telegraph-Cable Co. v. Adams, 155 U. S. 688, 695-696 [15 Sup. Ct. 268, 360, 39 L. ed. 311]: 'It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and can not be sustained.' . . The difference in effect between

a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude, and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax can not be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government." See also Shaffer v. Carter, 252 U. S. 37 (supra). It will thus be seen that in construing the acts and ordinances in the decisions relied on by the Court of Appeals, above mentioned, the courts in those cases were governed, in some expressly, by the rule that an unconstitutional construction will not be placed upon a statute or ordinance, unless demanded by the language and express purpose of the law being construed. The cases are, however, distinguishable in other particulars not necessary to be here dealt with. It is sufficient to say that these decisions are not authority either for or against the construction contended for by the revenue commission of the income-tax act of 1929. One decision cited by the Court of Appeals (Converse v. Northern Pac. Ry. Co., supra) dealt with an income tax. In that case the court, while reaching a conclusion placing a similar construction on the term "within the State," as used in the income-tax statute then before it, refused to follow Pacific Express Co. v. Seibert, supra, saying: "The trial court did not attempt to construe this law as an independent proposition, but held that the words 'within the State' had been construed by the Supreme Court to mean purely intrastate business when used in a taxing statute very similar to the one now under consideration.

We are unable to agree with the trial court that the above phraseology, when used in a taxing statute affecting the business of a carrier crossing the State line, must always be given the meaning which the Supreme Court gave it in the above case. Obviously, the words themselves may mean either purely intrastate business or intra and interstate business which comes within the State. Therefore, whenever such terms are used in a statute, they must be construed in accordance with the intention of the legislature in enacting the particular statute. Hence we must construe the meaning of these words as used in this statute." It appeared from the decision that the act under construction contained the expression "within the State" in eight sections, and the expression "without the State" in five of those eight. The court stated that it was unable to determine the meaning of the expression from the act itself, and the construction turned upon the rule that no property is subject to taxation unless the legislative intent is manifest. We, like the court in the Converse case, must construe the meaning of the words "business done in this State" as used in the statute before us.

A reading of sections of the Georgia income-tax act of 1929, quoted above, discloses that the basis of the Georgia tax is the net income taxable by the United States; that is, income derivable from both interstate and intrastate commerce (*State Revenue Commission* v. *National Biscuit Co.*, 179 *Ga.* 90, 97, 175 S. E. 368), the tax collectible by the State, however, to be at the rate and scale, and to be returned, calculated, and ascertained and paid as set forth elsewhere in the act. The bone of contention relating to the question now being discussed is the meaning of the term contained in section 3 of the act, "business done in this State." We must of necessity concede that the term, in and of itself, can not be made to mean business done in this State and other States; but this does not necessarily mean that the tax imposed by the act is confined to income derived from business done in this State. A section of an act, construed alone, may have a meaning entirely different when construed with other provisions of the act of which it is a part. Terms may themselves be or include a subject, or may be only a modifier of a subject, depending upon the construction of such terms in their relation to the objects dealt with in the act as a whole. Does the term "business done in this State," as used in the

act before us, designate the income to be taxed, or does it refer to the return, calculation, and ascertainment of the portion of the income to be taxed? Section 3 in which the term is used does not provide that such non-resident corporation mentioned therein shall be *taxed* on its income confined to business done in this State; the section merely provides that such corporation shall make a *return* confined to its business done in this State. In order to determine the income which is the basis of the tax it is necessary to refer to other provisions of the act. The income to be taxed, or which is the basis of the tax, is the same as that taxable by the United States (sec. 1, 2); that is, the entire net income which may be derived from business both within this State and out of it. A non-resident corporation carrying on business in this State is required to make two returns, one showing its entire net income (sec. 1, 2), and another confined to its business done in this State (sec. 3). Construing section 3 of the act together with sections 1 and 2, we think the conclusion is apparent that section 3 merely provides a method of calculating and ascertaining the tax to be paid, rather than the ascertainment of the income to be taxed; that is, it provides only for a return which will show the proportion of the basic income to be taxed—a return showing a proportion rather than a whole, as relating to the income taxable.

■ Having reached the conclusion that the income-tax act of 1929 sufficiently manifests the intention of the legislature to impose a tax on non-resident corporations doing business in this State, based upon their entire net income but apportioned to such part of that entire net income as is attributable to business done in this State, we are confronted with the necessity of determining whether the statute is ineffective in this particular because of the contention that it sets forth no method of determining what portion of the entire net income of such corporation is attributable to business done in the State. It is stated in 61 C. J. 1583: "The income of a corporation or other taxpayer operating both within and without the State should be allocated or apportioned, for purposes of taxation, in such manner as may be prescribed by statute; but where it does not appear how much of the income of a non-resident or foreign corporation was derived from sources within the State, so as to be subject to taxation, and the legislature has prescribed no method of determining the amount thereof, officers administer-

ing the tax law are without authority, in the absence of statute particularly conferring it upon them, to devise a scheme for making an apportionment." In Porto Rico Mercantile Co. v. Gallardo, 6 Fed. 526, the court, in construing the language of the statute there involved, said: "We think it is such as to disclose that it was not the intention of the legislature to tax income or profits from sales of Porto Rican products in New York by a corporation organized in the United States and having its principal place of business in New York, so far as such income arose out of increment due to the acts or transactions occurring outside Porto Rico, but only the profits arising out of increment due to acts or transactions within Porto Rico. A statute authorizing a tax on such profits can be made workable only in case it defines a method of apportionment for ascertaining them. But the taxing statute in question makes no provision by which the proportion of income attributable to increment in Porto Rico due to acts as in the handling of the property there can be ascertained, and the taxing authorities of Porto Rico assessed this tax on the entire net profits arising from sales in New York without attempting an apportionment. If it can be said to be probable that the storing of the molasses in Porto Rico increased its value there, it is impossible to determine the amount of profit attributable to that increase arising out of the sales in New York, and, in the absence of statutory provisions defining how the share of income fairly attributable to it may be determined for taxing purposes, we know of no way in which a law authorizing such a tax can be made workable and a tax assessed thereunder upheld." In the above case the statute there involved was construed as not providing for or contemplating a tax on the entire net income but apportioned to such part as was attributable to business done in Porto Rico; furthermore no attempt was made to so apportion the income. The tax therefore was clearly invalid, and what was said relating to the absence of statutory provisions must be construed with due regard to the construction placed upon the statute.

In Commonwealth v. P. Lorillard Co., 129 Va. 74 (105 S. E. 683), the income-tax act of Virginia embraced all income, including that from business in or out of the State, and made no provision for the manner of ascertaining the proportion of the income derived from sources outside of the State. The tax-

payer was a non-resident of the State. In discussing the liability of the non-resident under the statute the court said: "It would seem plain that the State of Virginia can not impose an income tax on income derived from business done outside of the State, and this was practically conceded in the argument; but counsel for the State seem to think that the difficulty can be avoided, and the statute upheld, by allowing the administrative officers to adopt their own methods of ascertaining what amount of income was derived from business done in Virginia, and extending the tax thereon at the rate fixed by the statute. This would be legislation, and not administration. Administrative officers have no such power. . . Tax-assessors have no power to make an assessment except in the manner prescribed by law; and if the statute prescribes a method of assessment which is invalid, the assessor has no power or authority to adopt a method of his own which would have been legal if it had been prescribed by the legislature. . . The court can not reshape a taxing statute which includes elements beyond the State's power of taxation, simply because it embraces elements that it might have reached had the statute been drawn with a different measure and intent." That decision simply held that the statute taxing the entire income of a non-resident, in the absence of any contemplation of apportionment, was invalid, and that the administrative body could not make the tax effective by providing a method of apportionment contrary to the express provisions of the statute. It is stated in 61 C. J. 1582, that "A statute giving an assessing officer or tax commission authority to make such rules and regulations as may be deemed necessary in order to carry out the provisions of an income-tax statute or the administration thereof is to be given a liberal construction to effectuate its purpose, and such officer or board is thereby authorized to prescribe and enforce any regulation designed to carry out the provisions of the tax statute and not contrary thereto; but no rule or regulation may be validly adopted which does not conform to, or conflicts with, the provisions of the statute imposing the tax." We have already held that the Georgia statute contemplated an apportionment, by reason of a proper construction of section 3 of the act. By this section the taxpayer is required to make a return showing the proportionate part of the entire income which is attributable to business done in this State. The statute thus provides for a

method of apportionment. In the absence of such return, the commissioner is authorized to make an assessment from the best information obtainable (sec. 15), and is authorized to "make all necessary regulations for carrying out the provisions of this act, provided the same are not in conflict with the provisions of this act and do not affect any substantive legal right of the taxpayer resulting therefrom" (sec. 14). Under these provisions of the act the administrative authorities are authorized, upon failure of the taxpayer to make a return showing the portion of the net income attributable to business done in this State, to determine such proportion under rules and regulations by them prescribed. See, in this connection, Western Union Tel. Co. *v.* Query, 144 S. C. 234 (142 S. E. 509), distinguishing Commonwealth *v.* P. Lorillard Co., supra. In *State Revenue Commission* v. *National Biscuit Co.,* supra, in construing the 1929 income-tax act, it was said: "In several decisions this court has stated broadly that public officers have only such powers as are granted to them by law, and 'take nothing by implication' (*Baggerly* v. *Bainbridge State Bank,* 160 *Ga.* 556, 561 (128 S. E. 766), and cit.) ; but a statement so sweeping could hardly be taken as excluding any possible exception or qualification. In Throop on Public Officers, § 542, it is stated: 'The rule respecting such powers is, that, in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers.'" So we conclude that the commission, under the provisions of the statute, even if not expressly, did by necessary implication have the power, upon failure of the taxpayer to do so, to determine the proportion provided for in the taxing statute.

The Court of Appeals erred in holding the execution issued for the collection of taxes imposed by the act of 1929 barred under the terms of the act of 1931; and erred in its construction of the term "business done in this State" as used in the act, and erred in holding that the commission was not authorized to apportion the income so as to arrive at the part of the entire net income attributable to business done in this State for purposes of taxation, as in the statute provided. Whether the method used by the com-

234

mission was unreasonable was a question not determined either by the trial court or the Court of Appeals, and the assignments of error to this court do not raise such a question, even if it could be raised. That question must be determined upon a re-examination of the case under the decision herein rendered.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*